**Marvin Lee WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 71858.

Court of Criminal Appeals of Texas, En Banc.

Dec. 11, 1996.

Rehearing Denied Feb. 5, 1997.

Douglas M. Barlow, Layne W. Walker, Beaumont, for appellant.

John R. Dewitt, Assist. District Attorney, Beaumont, Matthew Paul, State's Atty., Austin, for State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder. Tex. Penal Code Ann. § 19.03(a)(3). The jury answered the punishment issues of Tex. Code Crim. Proc. Ann. art. 37.071 in such a manner that the trial judge sentenced appellant to death. Appeal to this Court is automatic. *Id.*, at § 2(h). As appellant does not challenge the sufficiency of the evidence, we will set forth only the facts necessary to resolve appellant's second point of error. We will reverse.

## I.

The second point of error contends the State, during its closing arguments at the guilt/innocence stage of trial, improperly struck at appellant over the shoulders of his trial counsel. Appellant complains of the following jury argument:

STATE: Ladies and gentlemen, it is not my job to wish the kind of case that I put on for you. I bring you the evidence that has been produced that indicates this man's guilt. What I wish in this case is immaterial. May be material to this man (indicating appellant). The only thing that I wish is that justice is done in this case. *I have taken a very sacred oath, in my opinion, to see that justice is done in every case I prosecute.* It is your duty—and in the last paragraph of this charge you can see—to see that justice is done in this case.

*[Defense Counsel] has no such oath, and what he wishes is that you turn a guilty man free. That's what he wishes, and he can wish that because he doesn't have the obligation to see that justice is done in this case.*

DEFENSE: Your Honor, I want to object. That's striking at the defendant over the shoulders of his attorney.

TRIAL JUDGE: Overruled.

DEFENSE: I'd ask the Court to instruct the jury that I have just as sacred an oath to see that justice is done.

TRIAL JUDGE: You do take an oath; but it does not have the wording that he's talking about, Counsel.

STATE: His oath is to represent the interest of his client to his utmost within the bounds of the law. He's done that. *But, see, it's not important to seek truth and justice under his oath. It is under mine.*

DEFENSE: Your Honor, I must object. That's a mischaracterization of my oath. My oath does not say that I'm not supposed to be looking for truth and justice.

TRIAL JUDGE: Overruled.

The State contends these comments were invited by defense counsel. The prosecutor, during closing argument, stated:

STATE: Is it [defense counsel's] duty to come into this courtroom and call me Hitler? He did that. That's incredible. He basically said—he basically called the State of Texas Hitler. You remember the word. Wow.

The State's remarks about Hitler refer to the following exchange which occurred during cross-examination of a defense witness:

STATE: You don't remember who you were standing there with listening to talk about—listening to the talk that was going on?

DEFENSE: Your Honor, I'm going to object to him continuing to misassert her testimony. She has on three occasions denied listening to anything, and he continues to say she did. And, just like Adolph Hitler, if you say it long enough, people start thinking that's what was said.

TRIAL JUDGE: Overruled. And that side bar remark will not be tolerated.

## II.

Jury argument must be confined to four permissible areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Cr.App.1980); *and, Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Cr.App. 1973). Appellate courts should not hesitate to reverse when it appears the State has departed from one of these areas in argument and has engaged in conduct calculated to deny the accused a fair and impartial trial. *Johnson v. State,* 604 S.W.2d 128, 135 (Tex. Cr.App.1980). The test to determine whether an improper argument constitutes reversible error is whether: (1) the argument is violative of a statute or; (2) it injects a new and harmful fact into the case; or (3) it is manifestly improper, harmful and prejudicial to the rights of the accused. *Thompson v. State,* 480 S.W.2d 624, 630 (Tex.Cr.App.1972); *Briddle v. State,* 742 S.W.2d 379, 389–390 (Tex.Cr.App.1987) (quoting *Todd v. State,* 598 S.W.2d 286, 297 (Tex.Cr.App.1980)).

### A.

For many years this Court has recognized prosecutors' arguments which attack defense counsel are manifestly improper because they serve to inflame the minds of the jury to the accused's prejudice. In *Lewis v. State,* 529 S.W.2d 533 (Tex.Cr.App.1975), the prosecutor made an argument identical to that complained of in the instant case. The prosecutor stated:

... [the other prosecutor] and I have taken a solemn oath to God to seek justice. You judge whether or not we have done it. *No such oath bears on either one of these attorneys [defense counsel].*

*Lewis,* 529 S.W.2d at 534. Even though the trial judge sustained defense counsel's objection to the argument the prosecutor continued:

All right. I would ask you to believe this: If, assuming this man is guilty, do they (defense counsel) want the truth in here before you?

*Id.* We held: "the effect of this argument was to instruct the jury that only the prosecutors seek to uphold truth and justice, whereas defense counsel have a license to use any means at their command to mislead the jury." *Id.* This type of argument strikes at the defendant over the shoulders of counsel and, when not invited by the actions of defense counsel, is reversible error. *Id.*

Similarly, in *Bell v. State,* 614 S.W.2d 122 (Tex.Cr.App.1981), the prosecutor argued the defense counsel's duty was to obtain an acquittal at any means. The State argued:

Defense counsel is a criminal defense lawyer. *He doesn't have the same duty I do. He represents the criminal. His duty is to see that his client gets off even if it means putting on witnesses who are lying.*

*Bell,* 614 S.W.2d at 123. Defense counsel's objection was sustained and his motion for mistrial overruled. We held the argument was improper and the trial judge's instruction to disregard was not sufficient to remove the prejudice it created. *Id.*

In *Bray v. State,* 478 S.W.2d 89 (Tex.Cr. App.1972), we held the State's jury argument

prejudiced the rights of the accused, and required a reversal. The prosecutor argued:

> STATE: Our client doesn't sit here at the counsel table with us and our client is not here to confer with us, we represent you folks. We represent the people here in this County. That's who our employer is and suffice it to say Ladies and Gentlemen I am grateful and I shall be eternally grateful that you are the people that are my employers and not the likes of him and that I am not representing this sort of thing. Rest assured I am very happy about that. I am grateful that I don't have to make my living that way.
>
> DEFENSE: We object to that Your Honor. He represents ...
>
> STATE: He opened the door Your Honor. I believe I'm entitled to answer his argument.
>
> TRIAL JUDGE: The jury heard it.
>
> STATE: I will reiterate I'm very grateful I don't have to make my living representing a man who first set up the robbery. ...

*Bray,* 478 S.W.2d at 89–90.[1] This Court found the prosecutor's highly improper argument was not invited by defense counsel. We concluded that no instruction would have sufficed to correct the error and remove the prejudice. We stated:

> Trial judges should assume the responsibility of preventing this type of argument. A rebuke by the trial judge in the presence of the jury may do more to end the practice of intemperate and improper argument than repeated admonitions or even reversals by this Court.

*Bray,* 478 S.W.2d at 90.

■ In light of these cases, "[i]t is axiomatic that the State may not strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity." *Fuentes v. State,* 664 S.W.2d 333, 335 (Tex.Cr.App.1984). In the instant case no evidence was presented to show the oath taken by the prosecutor. Therefore, the argument injected a new fact into the

case. *Berryhill v. State,* 501 S.W.2d 86, 87 (Tex.Cr.App.1973). The prosecutor's statements were akin to those we found objectionable in both *Lewis* and *Bell.* In sum, the argument was outside the record, manifestly improper and prejudicial to the rights of the accused.

### III.

■ We must now decide whether the improper argument was invited by defense counsel. The invited argument rule permits prosecutorial argument outside the record in response to defense argument which goes outside the record. *Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Cr.App.1981); *and, Franks v. State,* 574 S.W.2d 124, 126 (Tex.Cr.App.1978).

■ In the instant case, appellant centered his defense around the flaws in the State's case. To this end, defense counsel argued:

> I don't want anybody to think—and I sure hope nobody holds it against the appellant because I'm a zealous attorney. I represent my people the best I know how to do. I pour my heart, my soul, and my guts into it. And I sure hope I don't offend anybody on his behalf. *And by putting a witness on the stand this morning I wasn't trying to call the prosecutor anything bad or impugn his character in any way.* I want you to know that. Sometimes in the heat of battle people get the wrong impression. *I was not trying to impugn the prosecutor or say that he had hidden this hair from us. Because I don't believe that with the prosecutor. I really and truly don't. But I do—wanted you to know since the impression might have been left that we, quote, "didn't ask for it," unquote, that you at least be aware of the fact that we were told it had either been lost or misplaced or wasn't in existence.* As you can see from that very tiny piece of evidence, very tiny, it wouldn't surprise anybody to have lost it; but we didn't know it until last Friday. And I thought

[1] In *Boyde v. State,* 513 S.W.2d 588 (Tex.Cr.App. 1974), the prosecutor made a similar improper argument claiming he would never represent a criminal defendant. We held such personal ar-

guments prejudicial, and designed to improperly inflame the minds of the jurors against the rights of the defendant and reversed. *Boyde,* 513 S.W.2d at 593.

it's important that you know that, and I sure thought it was important that you not be left with the impression that we knew it was up there and didn't do anything with it.

Defense counsel did not cast aspersions upon the prosecutor. In fact, he did the opposite by apologizing for any hint of impropriety the jury may have gleaned from an earlier witness regarding this evidence. Defense counsel pursued this argument so as not to leave the jury the impression the defense did not "ask for" this evidence. The entirety of the defense argument consists of an attack on the evidence and upon evidence the State failed to present or explain to the jury. This is the very heart and soul of a defense counsel's obligation to his client. The defense argument was not an attack on the prosecutor.

Defense counsel's side bar remark mentioning Hitler was remedied when the trial judge overruled the objection and stated that the side bar remark would not be tolerated. At that point it was incumbent on the State to seek more relief if the State thought it was necessary to remedy the side bar remark. After receiving a favorable ruling and all of the relief it felt necessary, the State cannot now contend the argument was invited. A prosecutor may not stray beyond the scope of the invitation. *Johnson*, 611 S.W.2d at 650; *and, Kincaid v. State*, 534 S.W.2d 340, 342 (Tex.Cr.App.1976). In other words, defense counsel's reference to Hitler during the testimonial portion of the trial did not give the State *carte blanche* to strike at the defendant over the shoulder of his counsel later at the closing argument phase of the trial. *Fuentes*, 664 S.W.2d at 336.

## IV.

■ Having determined the improper argument was not invited, we must conduct a harm analysis under Tex.R.App.Proc. 81(b)(2). The applicable legal standard of review is whether, in light of the record as a whole, there is a reasonable possibility the improper argument might have contributed to appellant's conviction. *Denton v. State*, 920 S.W.2d 311 (Tex.Cr.App.1996)(citing and quoting *Orona v. State*, 791 S.W.2d 125, 128

(Tex.Cr.App.1990)). In applying this standard of review we do not look for overwhelming evidence of guilt because it is improper for an appellate court to substitute its judgment for that of the factfinder *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Cr.App.1989). Instead, we focus on the error and its possible impact. *Id.*, 790 S.W.2d at 586–588. "If the error was of a magnitude that it disrupted the [factfinder's] orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted." *Id.*, 790 S.W.2d at 588.

■ To perform a harmless error analysis an appellate court should consider the following factors: 1) the source of the error; 2) the nature of the error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a juror would probably place upon the error; and 5) whether declaring the error harmless would encourage the State to repeat it with impunity. *Orona*, 791 S.W.2d at 130. Though no one factor is dispositive, the existence and severity of these factors are indicative of the harm caused by the State's improper argument.

■ In the instant case it is evident the prosecutor was intent upon informing the jury of the distinction he perceived between the oath of a prosecutor and the oath of a defense attorney. It is equally evident that the prosecutor sought to emphasize that such a distinction involved an obligation to "seek truth and justice." Thus the source of the error was the State and the nature of the error is grounded in one of the basic tenets of criminal law, due process. For whenever a trial lacks truth or fairness, due process is implicated. *See generally, In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Brown v. State*, 921 S.W.2d 227, 230 (Tex.Cr.App.1996) (Keller, J., concurring); *Flores v. State*, 904 S.W.2d 129, 132 (Tex.Cr.App.1995) (Overstreet, J., dissenting); *and, Ex parte Brandley*, 781 S.W.2d 886 (Tex.Cr.App.1989).

Moreover, in *Boyde v. State*, 513 S.W.2d 588, 592 (Tex.Cr.App.1974), and *Gomez v. State*, 704 S.W.2d 770 (Tex.Cr.App.1985), we noted the general public does not understand the concept that defense attorneys are under

an ethical obligation to represent the accused regardless of their personal opinion as to the guilt of the accused. *Id.,* 704 S.W.2d at 771. In *Boyde* we stated:

> This general misunderstanding by the public serves to contribute to the prejudicial effect of an argument by a prosecutor which strikes at a member of the bar for representing a person accused of crime.

*Boyde,* 513 S.W.2d at 592. *See also, Bray,* 478 S.W.2d at 89.

As to the third factor, the State re-emphasized the argument after defense counsel objected, and thus compounded the prejudicial effect upon the jury. *See, Bray,* 478 S.W.2d at 90; *and, Boyde,* 513 S.W.2d at 592. The State's continuation of the argument distinguishes the instant case from *Orona* where the State did not advance the improper argument. In *Orona* we noted that had the State continued with the improper argument, a reversal might have been necessary. *Id.,* 791 S.W.2d at 130.

We now turn to the fourth factor, the weight a juror would probably place upon the error. In the instant case, the trial judge twice overruled defense counsel's objection to the State's improper arguments, and by doing so further aggravated the harm. "[A] trial court, by overruling an objection to an improper argument, puts 'the stamp of judicial approval' on the improper argument, thus magnifying the possibility for harm." *Good v. State,* 723 S.W.2d 734, 738 (Tex.Cr. App.1986); *and, Burke v. State,* 652 S.W.2d 788, 790 (Tex.Cr.App.1983). Thus, the first four *Orona* factors militate toward a finding of harm.

The final factor for consideration requires the Court to consider the probable effect of holding the State's improper argument harmless. In *Summers v. State,* 147 Tex.Crim. 519, 182 S.W.2d 720, 721 (1944), this Court reversed on the basis of an improper argument made by the prosecutor in which he argued prejudicial facts which were not a rational deduction from the evidence. We held:

> ... We fail to understand just why a prosecuting attorney would depart from the well established rules requiring that arguments be based upon evidence legally introduced in the case.... Just what the purpose of the Assistant District Attorney was other than to inflame the minds of the jury and prejudice them against the appellant, we are unable to understand. By this argument the prosecuting attorney was striking at the appellant over the shoulders of his counsel in an endeavor to inflame the minds of the jury to his prejudice. The accused is entitled to a fair trial without reference to outside influence.

*Summers,* 182 S.W.2d at 721–722.

Today, more than fifty years later, we are still unable to understand why a prosecutor would depart from the well established rules for proper jury argument. From the cases cited in part II. of this opinion, it is clear that the type of argument presented here has never been permitted. In light of the other *Orona* factors militating against finding the error harmless, declaring this error harmless would have the result of encouraging the State to make improper jury arguments with impunity.

Therefore, when the record as a whole is considered, all five of the *Orona* factors militate toward a finding of harm in the instant case. *Id.,* 791 S.W.2d at 130.[2] Appellant's second point of error is sustained. The judgment of the trial court is reversed and the case is remanded to that court.

Judgment of trial court reversed and remanded.

McCORMICK, P.J., WHITE and KELLER, JJ., dissent.

---

**2.** In concluding the error was harmless, the dissent relies primarily upon the strength of the State's case. Such an analysis is contrary to *Orona* where we stated: "It is the effect of the error and *not* the existence of overwhelming evidence or the lack thereof that dictates our judgment." *Id.,* 791 S.W.2d at 130 (emphasis added). In essence, the dissenter merely restates his

argument from *Denton,* 920 S.W.2d at 313 (Mansfield, J., concurring). Continuing this argument, the dissenter notes that the State's case at the punishment phase was strong. *Post,* at 64. However, the strength of the State's case at that phase is wholly immaterial to the instant issue because the improper argument occurred at the guilt-innocence phase.

MANSFIELD, Judge, dissents.

I disagree strongly with the majority's disposition of appellant's second point of error. Therefore, I respectfully dissent. I would affirm the judgment of the trial court.

In his second point of error, appellant contends that the trial court erred in overruling his objection to improper prosecutorial jury argument at the guilt/innocence stage. Appellant argues that the prosecutor "accus[ed] [defense] counsel of acting in bad faith and insincerity in representing [him], which [was] manifestly improper."

The record reflects that, at the time for closing arguments at the guilt/innocence stage, the State waived its opening but reserved the right to close. Appellant's counsel then made his closing argument, during which he accused the State of general incompetence in its evidence-gathering, of being "very sloppy" with "the facts," and of being "very subject to making a mistake." The prosecutor, apparently irritated, then began his closing argument, the relevant portion of which was as follows:

THE STATE: Ladies and gentlemen, it is not my job to wish the kind of case that I put on [for] you. I bring you the evidence that has been produced that indicates this man's guilt. What I wish in this case is immaterial. May be material to this man [indicating toward the defendant]. The only thing that I wish is that justice is done in this case. I have taken a very sacred oath, in my opinion, to see that justice is done in every case I prosecute. It is your duty ... to see that justice is done in this case.

*[Defense counsel] has no such oath, and what he wishes is that you turn a guilty man free. That's what he wishes, and he can wish that because he doesn't have the obligation to see that justice is done in this case.*

DEFENSE COUNSEL: Your Honor, I want to object. That's striking at the defendant over the shoulders of his attorney.

THE COURT: Overruled.

DEFENSE COUNSEL: I'd ask the Court to instruct the jury that I have just as sacred an oath to see that justice is done.

THE COURT: You do take an oath, but it does not have the wording that he's talking about, Counsel.

THE STATE: *His oath is to represent the interest of his client to his utmost within the bounds of the law. He's done that. But, see, it's not important to seek truth and justice under his oath. It is mine.*

DEFENSE COUNSEL: Your Honor, I must object. That's a mischaracterization of my oath. My oath does not say that I'm not supposed to be looking for truth and justice.

THE COURT: Overruled.

I do not concede that the prosecutor's argument presented *reversible* error. But, although I agree with the majority that the trial court erred in overruling appellant's objection to the prosecutor's argument, we need not reverse the judgment of the trial court if we "determin[e] beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex. R.App. Proc. 81(b)(2).

The purpose of Rule 81(b)(2) is, quite sensibly, to avoid setting aside convictions and punishments "for small errors or defects that have little, if any, likelihood of having changed the result of the trial." *Chapman v. California*, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (discussing identical federal harmless error test). Under the rule, the duty of the appellate court is to determine whether there is a *reasonable* likelihood that the error, either alone or in context, *contributed* to the finding of guilt *or* to the assessment of punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex.Crim.App.1989). In other words, the appellate court must determine whether the trial was an essentially fair one, in which there was little, if any, chance that the conviction and punishment were based on the error that occurred. *Id.* at 588. This determination is necessarily "one of judgment." *Id.* at 585.

In carrying out this task, our primary focus should be on the probable impact of the error on the minds of average jurors. *Castillo v. State*, 810 S.W.2d 180, 185 (Tex.Crim.

App.1990). The strength of the State's case,[1] the extent (if any) to which the error was emphasized, and the extent (if any) to which the error placed the defendant in a poorer light are all factors that may be logically relevant to consider in the assessment of the error's impact on the jury. *Moreno v. State,* 858 S.W.2d 453, 466 (Tex.Crim.App.1993); *Castillo v. State,* 810 S.W.2d at 185; *Harris v. State,* 790 S.W.2d at 587. In any given case, other factors may also be logically relevant. Finally, we have also held that the "source" of the error, the prosecutor's subjective intent with respect to the error, and the possibility that declaring the error harmless would encourage the State to repeat it, are also relevant factors to consider, despite the lack of a textual basis in Rule 81(b)(2) for such factors. *Harris v. State,* 790 S.W.2d at 587–588. See *Higginbotham v. State,* 807 S.W.2d 732, 739 (Tex.Crim.App.1991) (Clinton, J., concurring).

Turning to the facts of the instant case, I have no difficulty concluding beyond a reasonable doubt that the prosecutor's argument did not contribute to appellant's conviction or punishment. My conclusion is based on several obvious factors. First, the State's case during the guilt/innocence stage was strong, if not actually overwhelming. Two witnesses positively identified appellant as one of the individuals who beat and kidnapped the victim from the parking lot of a Beaumont convenience store on November 9, 1992. One of those witnesses also testified that appellant told the victim that he was going to kill him.[2] Finally, a third witness testified that she knew appellant and that he confessed to her sometime shortly after the victim's body was found.

Second, the State's case at the punishment stage was also strong. The State's evidence established that appellant had been convicted previously, in Texas courts, of robbery (once)

and aggravated robbery (twice). In addition, five witnesses testified that appellant had a bad reputation for being peaceable and law-abiding.

Third, the prosecutor's statements that defense counsel "wished for a guilty man to go free" and had "no obligation to see that justice was done," although inappropriate and unfortunate, did not place appellant in a poorer light in the context of the evidence presented at trial.

Fourth, the prosecutor's statements were quickly followed by his admission that defense counsel had represented appellant "within the bounds of the law." The prosecutor did not allege or imply that defense counsel had suborned perjury or had otherwise engaged in illegal tactics. Thus, the prosecutor's statements did not amount to an impermissible attack on the defense's case, to the extent that reversible error was committed.

Fifth, the prosecutor's statements were not repeated or emphasized elsewhere in his lengthy closing argument.

Sixth, the trial court's overruling of appellant's objection, although erroneous, is not in itself dispositive in a harmless error analysis. See *Orona v. State,* 791 S.W.2d 125, 128–130 (Tex.Crim.App.1990).

Seventh, I discern nothing in the record that would indicate that the prosecutor was deliberately attempting to taint the trial process. Rather, it seems only that the prosecutor was attempting to respond to the arguments of opposing counsel. For that same reason, I doubt that holding the prosecutor's argument harmless would encourage the State to repeat such an argument with impunity in the future.

In summary, I conclude beyond a reasonable doubt that the prosecutor's argument, though error, was not the type of error that,

---

1. The majority has completely ignored the strength of the State's evidence, although that is the single most important factor in determining an error's impact on the minds of average jurors. "The major consideration in applying the analysis of *Harris v. State* [790 S.W.2d 568 (Tex.Crim. App.1989)] is generally whether the amount and nature of the untainted evidence permits a confident inference that the error did not influence the trier of fact." G. Dix & R. Dawson, *Texas*

*Criminal Practice and Procedure* § 43.441 at 349 (1995).

2. The victim's body was found on the early morning of November 10, 1992, about two blocks from the same convenience store. An autopsy confirmed that the causes of death were gunshot wounds to the victim's head and neck.

either alone or in context, mandates reversal under Rule 81(b)(2). There is little, if any, likelihood that the prosecutor's argument changed the result of the trial. Accordingly, I dissent.