TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00212-CR







Jason Ishee, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0955584, HONORABLE JON N. WISSER, JUDGE PRESIDING







A jury found appellant Jason Ishee guilty of capital murder. Tex. Penal Code Ann. §
19.03(a)(2) (West 1994). The State did not seek the death penalty, and the district court assessed
punishment at imprisonment for life. Tex. Penal Code Ann. § 12.31(a) (West 1994); Tex. Code Crim.
Proc. Ann. art. 37.071, § 1 (West Supp. 1998). We will affirm.

David Reynolds, Robert Watt, and Ishee, each of whom was eighteen or nineteen years
old, spent the late afternoon of October 31, 1995, loitering outside an Austin shopping mall. As night fell,
Watt and Ishee agreed on a scheme to steal Reynolds's ten-year-old car. They asked Reynolds to drive
them to an apartment complex, ostensibly to purchase marihuana. At the complex, they lured Reynolds
to the rear of the building where they beat him to death with their fists and feet, and with a large rock. Watt
and Ishee took Reynolds's car and five dollars they found in his pocket, then drove to Ishee's girlfriend's
house. Ishee showed the girl the blood on his hands and bragged that he had killed someone. Watt and
Ishee spent the rest of that night and the following day driving around Austin in Reynolds's car, then left
town. They were arrested on November 3 in Wharton, still driving the stolen vehicle. Each man gave a
written statement to the police admitting the robbery-murder, blaming the other as the chief actor, and
denying an intent to kill Reynolds. (1)

Ishee's first point of error complains of a remark made by the prosecutor during his opening
statement to the jury. The prosecutor said:


In all criminal cases everyone has a certain role that they play. The role of the
Judge in this criminal case is what we call the law finder or the law giver. Our Judge
decides what evidence is and is not allowed and what laws are applied in this particular
case. The role of the defense attorney is to zealously represent their clients. The role
of the prosecutors is to see that justice is done.



(Emphasis added.) Appellant objected that the prosecutor was "striking at my client over the shoulder of
counsel." The objection was overruled. The prosecutor continued, "Is to see that justice is done and to
bring to you evidence that is relevant to this case. And your role in all of this is what we call the fact finder.
. . ."

Appellant argues that the emphasized portion of the prosecutor's statement was
comparable to the remarks deemed reversible error in Wilson v. State, 938 S.W.2d 57, 58-60 (Tex.
Crim. App. 1996). In that case, the prosecutor told the jury during final argument, "I have taken a very
sacred oath, in my opinion, to see that justice is done in every case I prosecute." He went on, "[Defense
Counsel] has no such oath, and what he wishes is that you turn a guilty man free. That's what he wishes,
and he can wish that because he doesn't have the obligation to see that justice is done in this case." After
the defendant's objection was overruled, the prosecutor added, "His oath is to represent the interest of his
client to his utmost within the bounds of the law. He's done that. But, see, it's not important to seek truth
and justice under his oath. It is under mine." Id. at 58 (italics omitted). The Court of Criminal Appeals
held these remarks to be a manifestly improper attack on defense counsel that, under the circumstances,
could not be deemed harmless. Id. at 62.

In Wilson and in each of the cases it discusses, the prosecutor said in so many words that
a defense lawyer's duty is to see that the guilty go free, even if it means using perjured testimony. The
obvious purpose of the remarks was to inflame the minds of the jurors and to prejudice them against the
defendant. The prosecutor's remarks in the cause before us, although improper, did not fall to the level
of impropriety seen in Wilson. It was not insulting or disparaging to say that a defense lawyer has a duty
to zealously represent his client. Unlike the prosecutor in Wilson, the prosecutor in this cause did not say
or imply that this duty included the known use of perjured testimony in order to secure the acquittal of a
guilty defendant. This cause is also distinguishable from Wilson because the challenged remark came during
opening statements, rather than during closing arguments just before the jury retired to deliberate. See Amis
v. State, 910 S.W.2d 511, 515 (Tex. App.--Tyler 1995, pet. ref'd) (statement early in trial has less
impact on jury). Under the circumstances presented, we conclude that the prosecutor's remarks did not
harm Ishee's substantial rights. Tex. R. App. P. 44.2(b); see Orona v. State, 791 S.W.2d 125, 128-30
(Tex. Crim. App. 1990) (argument that defense lawyers know how "to get people off" held harmless
error). Point of error one is overruled.

Next, Ishee urges that the district court erred by refusing to admit "a refined, redacted
version of the accomplice statement instead of the State's redacted version." Ishee refers to Watt's written
confession, which was admitted in evidence after being edited to delete all references to Ishee. See
Richardson v. Marsh, 481 U.S. 200, 211 (1987); Bruton v. United States, 391 U.S. 123, 135-36
(1968); McMahon v. State, 582 S.W.2d 786, 793 (Tex. Crim. App. 1978) (admissibility of nontestifying
codefendant's confession). The redacted version tendered for admission by the State had large blank areas
where the necessary deletions were made. Ishee tendered his own, retyped version of Watt's redacted
statement that did not have blank spaces. The court admitted the State's tendered exhibit rather than
Ishee's. 

Ishee argues that the gaps in Watt's redacted statement invited the jury to "speculate as
to the worst possible behavior to be attributable to Ishee. Had the Court let the jury receive [the defense
version], virtually all such speculation . . . would be eliminated because the jury would not see the gaps." 
Ishee cites no authority supporting his argument. No motion for new trial was filed and there is no evidence
that the jury did, in fact, speculate to Ishee's prejudice regarding the missing portions of Watt's statement. 
Reversible error is not presented. Point of error two is overruled.

Finally, Ishee complains that Watt's attorney repeatedly attempted to adduce evidence of
irrelevant extraneous misconduct by Ishee. See Tex. R. Evid. 404(b). He refers us to the following
portions of the record:


 Watt's attorney asked Ishee's girlfriend if Ishee was "a violent person" and if he bragged
about "going up and hitting people." Ishee's objections to these questions were sustained
and the jury was instructed to disregard them. Ishee's motions for mistrial were overruled. 
Counsel also asked the witness how Ishee made money. She answered, "Sometimes he
got it, you know, beating up people, sometimes he didn't." The court sustained Ishee's
objection to this answer and instructed the jury to disregard it. Again, a motion for mistrial
was overruled. Finally, counsel asked her if Ishee "had the ability to kill someone with his
own hands without using a weapon." Ishee's objection was overruled and the witness
answered affirmatively.


 Ishee's girlfriend's mother was asked by Watt's attorney if Ishee was "a physically
violent person" and if she was "afraid of what he might do" to her or her daughter. Ishee's
objections to these questions were sustained and the jury was instructed to disregard. 
Motions for mistrial were overruled.


 A young man who spent the afternoon at the mall with Ishee, Watt, and Reynolds was
asked by Watt's attorney if Ishee told him that "he tried to jack somebody for a truck." 
Ishee's objection was sustained and the jury was instructed to disregard the question. 
There was no motion for mistrial.



Insofar as the last item is concerned, Ishee did not obtain an adverse ruling and nothing is presented for
review. See Tex. R. App. P. 33.1.

Any error in asking an improper question or in admitting improper testimony will ordinarily
be cured or rendered harmless by an instruction to disregard. Guzmon v. State, 697 S.W.2d 404, 408
(Tex. Crim. App. 1985). There is no basis in the record for concluding that the district court's instructions
to disregard were not sufficient to cure any error in this cause. Similarly, we believe that the question and
answer to which Ishee's objection was overruled, regarding his ability to kill a person with his hands, did
not harm Ishee's substantial rights. It was undisputed at trial that Ishee and Watt killed Reynolds with their
hands, feet, and a rock. Ishee bragged about the murder to his girlfriend and displayed his bloody hands
to her. At trial, Ishee's primary strategy was to raise doubt as to whether he and Watt had intended to kill
Reynolds, in order to secure a conviction for the lesser offense of murder. Under the circumstances, this
point presents harmless error at most. Point of error three is overruled.

The judgment of conviction is affirmed.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: May 14, 1998

Do Not Publish

1. Watt and Ishee were tried jointly. Watt's appeal is pending in this Court as our cause number 03-97-00213-CR.


 of the State's redacted version." Ishee refers to Watt's written
confession, which was admitted in evidence after being edited to delete all references to Ishee. See
Richardson v. Marsh, 481 U.S. 200, 211 (1987); Bruton v. United States, 391 U.S. 123, 135-36
(1968); McMahon v. State, 582 S.W.2d 786, 793 (Tex. Crim. App. 1978) (admissibility of nontestifying
codefendant's confession). The redacted version tendered for admission by the State had large blank areas
where the necessary deletions were made. Ishee tendered his own, retyped version of Watt's redacted
statement that did not have blank spaces. The court admitted the State's tendered exhibit rather than
Ishee's. 

Ishee argues that the gaps in Watt's redacted statement invited the jury to "speculate as
to the worst possible behavior to be attributable to Ishee. Had the Court let the jury receive [the defense
version], virtually all such speculation . . . would be eliminated because the jury would not see the gaps." 
Ishee cites no authority supporting his argument. No motion for new trial was filed and there is no evidence
that the jury did, in fact, speculate to Ishee's prejudice regarding the missing portions of Watt's statement. 
Reversible error is not presented. Point of error two is overruled.

Finally, Ishee complains that Watt's attorney repeatedly attempted to adduce evidence of
irrelevant extraneous misconduct by Ishee. See Tex. R. Evid. 404(b). He refers us to the following
portions of the record:


 Watt's attorney asked Ishee's girlfriend if Ishee was "a violent person" and if he bragged
about "going up and hitting people." Ishee's objections to these questions were sustained
and the jury was instructed to disregard them. Ishee's motions for mistrial were overruled. 
Counsel also asked the witness how Ishee made money. She answered, "Sometimes he
got it, you know, beating up people, sometimes he didn't." The court sustained Ishee's
objection to this answer and instructed the jury to disregard it. Again, a motion for mistrial
was overruled. Finally, counsel asked her if Ishee "had the ability to kill someone with his
own hands without using a weapon." Ishee's objection was overruled and the witness
answered affirmatively.


 Ishee's girlfriend's mother was asked by Watt's attorney if Ishee was "a physically
violent person" and if she was "afraid of what he might do" to her or her daughter. Ishee's
objections to these questions were sustained and the jury was instructed to disregard. 
Motions for mistrial were overruled.


 A young man who spent the afternoon at the mall with Ishee, Watt, and Reynolds was
asked by Watt's attorney if Ishee told him that "he tried to jack somebody for a truck." 
Ishee's objection was sustained and the jury was instructed to disregard the question. 
There was no motion for mistrial.



Insofar as the last item is concerned, Ishee did not obtain an adverse ruling and nothing is presented for
review. See Tex. R. App. P. 33.1.

Any error in asking an improper question or in admitting improper testimony will ordinarily
be cured or rendered harmless by an instruction to disregard. Guzmon v. Sta