

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00179-CR

ABRAHAM GODINEZ                                                           APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Abraham Godinez of felony driving while intoxicated (DWI) in Denton County's County Criminal Court No. 5, which has concurrent felony DWI jurisdiction with the Denton County district courts when the case is properly assigned.[2]   The jury assessed his punishment at seven

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Gov't Code Ann. § 25.0634(a) (West 2004).

years' confinement, and the trial court sentenced him accordingly. The jury returned a negative finding to the deadly weapon question.

Appellant brings two issues on appeal, arguing that the trial court reversibly erred by admitting the audiotape of Taylor Cox's telephone call to the 9-1-1 operator when he was not called as a witness because (1) Cox's statements were inadmissible hearsay and improperly bolstered other testimony and (2) the audiotape's admission denied Appellant his constitutional rights of confrontation and cross-examination. We hold that the trial court erred by admitting the audiotape in its entirety because a large portion of it contained testimonial hearsay, and the admission of the tape when the declarant was not present in court for confrontation and cross-examination violated Appellant's Sixth Amendment rights under the Constitution of the United States.[3] But because we must also hold that such error was harmless, we affirm the trial court's judgment.

**Summary of the Facts**

At trial, Barry Pennell, who was Aubrey's police chief at the time of Appellant's arrest, testified that as he was driving home one night, he observed Appellant's vehicle driving below the posted speed, swerving, and making "jerky" motions. Pennell called Denton County law enforcement dispatch and reported Appellant's location. Pennell continued to follow Appellant and, after Appellant

---

[3] *See* U.S. Const. amend. VI*; see generally Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

exited the freeway, witnessed him weave into the oncoming lane. Denton police officer Elisa Whidon stopped Appellant after she saw him cross over the center stripe of the road and into oncoming lanes. Whidon testified that when she stopped Appellant, she noted the odor of alcohol on his person.

Denton police officer Mark King arrived on the scene after Whidon had stopped Appellant. King testified that Appellant failed field sobriety tests, smelled of alcohol, and stood with a circular sway. Appellant was arrested for DWI and refused to provide a blood or breath specimen.

Prior to Whidon's stop of Appellant, another driver, Taylor Cox, had called 9-1-1 and reported that Appellant was driving erratically and that he believed Appellant was intoxicated. While on the phone, Cox described his observations of Appellant's driving to the 9-1-1 operator, making statements such as, "He almost hit a guy head on," "He's all over the road; he's going from yellow line to white line," and "He is driving very erratically, going from five miles [per hour] up to fifty. He's about to hit a barrier. He just missed it. He's crossing the dash-line, playing chicken." At trial, the State offered as Exhibit 2 the audiotape of Cox's call. The trial court admitted the audiotape over Appellant's objection. Cox was not called as a witness. Leslie Jackson, the 9-1-1 operator who took the call, did testify.

**Confrontation and Cross-Examination**

Taylor Cox's portion of the audiotape begins with his report of bad driving by the operator of a pickup truck with Mexico license plates. Jackson responded

3

by trying to verify his location but soon announced that she was broadcasting the information. Cox reported that he had just exited the freeway. Pennell also exited the freeway behind the pickup truck. Both men, apparently, followed Appellant for a time before they exited the freeway. Although Cox turned on his strobe light and provided editorial commentary in describing the pickup truck's movements, Jackson at first made only statements trying to verify Cox's location and contact information. She asked if Cox was "still following," his name, his phone number, and his home address. She also asked, "Where are you now?" and "I'm sorry. Where are you at?" Statements made to police in response to questions propounded for the purpose of directing patrol officers to the correct location to deal with the emergency are not testimonial.[4]

Then there was an excited "Golleeeee!" from Cox, and Jackson asked Cox what had happened. From that point on, Cox's statements were clearly testimonial and in response to questions such as, "Did he go through the red light?", "How's he driving?", "You're right there in the construction? How is he doing?", and "How fast are you going?"[5] And the State did not show that the statements Cox made in response to Jackson's question were present sense impressions.[6] The Texas Court of Criminal Appeals has addressed the issue of

---

[4]*Davis v. Washington,* 547 U.S. 813, 821–22, 126 S. Ct. 2266, 2273–74 (2006).

[5]*See Wall v. State*, 184 S.W.3d 730, 735–36 (Tex. Crim. App. 2006).

[6]*See* Tex. R. Evid. 803(1).

the admissibility as present sense impression of "factual observations, narrations, opinions, and conclusions made by a citizen or bystander that might be intended by the declarant to be made with an eye toward future litigation or evidentiary use[:]"[7]

> The recorded factual observations made by police officers investigating a suspected crime are not the type of "non-reflective" street-corner statements of objective observers that the present sense impression exception is designed to allow. Courts admit present sense impression statements precisely because they are non-narrative, off-hand comments made without any thought of potential litigation by a neutral and detached observer without any motive to fabricate, falsify, or otherwise exaggerate his observations.
>
> Conversely, on-the-scene observations and narrations of a police officer conducting a roadside investigation into a suspected DWI offense are fraught with the thought of a future prosecution: the police officer is gathering evidence to use in deciding whether to arrest and charge someone with a crime. Calculation and criminal litigation shimmer in the air; the officer is gathering evidence, he is not making an off-hand, non-reflective observation about the world as it passes by. ***Similarly, factual observations, narrations, opinions, and conclusions made by a citizen or bystander that might be intended by the declarant to be made with an eye toward future litigation or evidentiary use are inadmissible under the rule***.[8]

For the same reasons that Cox's responses to Jackson's questions were hearsay and not admissible as present sense impressions, they were likewise not non-testimonial statements that could be admitted into evidence without allowing Appellant the opportunity to confront and cross-examine the declarant.

---

[7] *Fischer v. State,* 252 S.W.3d 375, 383, 384 (Tex. Crim. App. 2008).

[8] *Id.* at 383–84 (citations omitted) (emphasis added).

The State did not sustain its burden to show that these questions and Jackson's statement that if Appellant was intoxicated, the district attorney would want Cox's identifying information (implying that the State would prosecute Appellant) were not made for purposes of establishing facts for later prosecution.[9] Once Jackson had advised patrol officers of Appellant's location and the route he was traveling, Jackson had fulfilled her role in containing any emergency. Her questions about whether Appellant had run a red light and how he was driving were not shown by the State to be other than information-gathering for purposes of prosecution. When a marked police unit appeared, Pennell, Cox, and the unit followed the truck, watching it cross the center stripe; Jackson had no role in containing an emergency. As in *Fischer,* Cox might testify to exactly what he saw and heard during his observation of Appellant, and his words "might be the very same as those he used during his on-the-scene narrative, but they must be given under oath and subject to cross-examination."[10]

Cox clearly had prosecution in mind when he offered to pull over behind the marked cars to talk to the police, but Jackson told him to go on. She told him that she had his information and that if the driver was intoxicated, the district attorney would use the information Cox had provided to contact him.

---

[9]*Davis,* 547 U.S at 821–22, 126 S. Ct. at 2273–74.

[10]*Fischer,* 252 S.W.3d at 387.

Appellant objected that the audiotape was hearsay, violated *Crawford*, and improperly bolstered Pennell's testimony. The trial court overruled the objections and admitted the entire audiotape. The trial court abused its discretion in doing so. Normally the bolstering objection would be an evidentiary objection without constitutional implications. In the context of the confrontation objection, the bolstering question also informs the harm analysis of the Sixth Amendment issue.

Because we determine that the error is constitutional, we apply rule 44.2(a).[11] The question is whether the trial court's error in admitting the audiotape in its entirety absent Cox's testimony was harmless beyond a reasonable doubt.[12] In applying the "harmless error" test, our primary question is whether there is a "reasonable possibility" that the error might have contributed to the conviction.[13]

Our harmless error analysis should not focus on the propriety of the outcome of the trial; instead, we should calculate as much as possible the probable impact on the jury in light of the existence of other evidence.[14] We

---

[11]Tex. R. App. P. 44.2(a).

[12]*See Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997).

[13]*Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[14]*Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001).

consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would be likely to encourage the State to repeat it with impunity.[15] This requires us to evaluate the entire record in a neutral, impartial, and even-handed manner, not "in the light most favorable to the prosecution."[16]

The Texas Court of Criminal Appeals has provided a test to be employed by appellate courts in assessing improperly admitted *Crawford*-barred testimony:

> Some Texas courts have also applied [*Delaware v.*] *Van Arsdall* or *Shelby [v. State]*, with the assumption that the purposes of cross-examination were fully met, to improperly admitted evidence. But when a witness does not testify at trial, it is difficult, if not impossible, to gauge how cross-examination might have impeached his in-court testimony, what bias he might have admitted to, what inconsistent statements he might have made during his testimony, how his demeanor might have affected the jury, and so forth. As the Supreme Court has stated, "such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence," while putting aside the out-of-court declarant's testimony.
>
> We therefore take this opportunity to clarify that the *Van Arsdall* initial assumption ("that the damaging potential of the cross-examination [was] fully realized") applies to confrontation errors of exclusion, not confrontation errors of admission. On the other hand, most of the non-exclusive list of factors set out in *Van Arsdall* may well be applicable in analyzing whether constitutional error in the admission of evidence is harmless under a *Chapman* [*v. California*] analysis.

---

[15] *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).

[16] *Id.* at 586.

Thus, courts reviewing whether the error in admitting out-of-court statements in violation of *Crawford* is harmless beyond a reasonable doubt should consider:

(1) The importance of the hearsay statements to the State's case;

(2) Whether the hearsay evidence was cumulative of other evidence;

(3) The presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and

(4) The overall strength of the prosecution's case.

Of course courts may consider other factors as well, but, in the final analysis, the reviewing court must be convinced, beyond a reasonable doubt, that the admission of *Crawford*-barred testimony would probably not have had a significant impact on the mind of an average juror. Put another way, is there a reasonable possibility that the *Crawford* error, within the context of the entire trial, "moved the jury from a state of non-persuasion to one of persuasion" on a particular issue?[17]

We address the *Davis* issues in order:

(1)    The facts in Cox's statement were not important because they also came in through Pennell's testimony;

(2)    Cox's hearsay evidence was cumulative of Pennell's testimony;

(3)    Only Pennell's testimony was available to corroborate or contradict Cox's testimony on material points of the earlier portions of Appellant's driving, but Whidon testified to seeing Appellant's truck cross the center stripe; and

(4)    The prosecution's case rested on Pennell's testimony; testimony of the arresting officer Whidon who witnessed Appellant's pickup crossing the center line and who smelled the odor of alcohol; the testimony of Officer King who testified to the odor of alcohol and

---

[17]*Davis v. State,* 203 S.W.3d 845, 851–53 (Tex. Crim. App. 2006) (citations omitted), *cert. denied*, 549 U.S. 1344 (2007).

9

Appellant's swaying and failing field sobriety tests; and Jackson's testimony about receiving Cox's call. Clearly, Cox's statements were more dramatic than Pennell's and Whidon's testimony, and clearly Cox's statements did bolster Pennell's testimony. But there was also testimony from Whidon and King.

A fifth consideration not contained in the *Davis* factors is the gratuitous statement by Jackson that the district attorney would prosecute Appellant if he was drunk. The district attorney did, indeed, prosecute Appellant. The trial court's admission of that statement is akin to admitting a statement by a prosecutor that the State would not be prosecuting a defendant if he were not guilty.[18] Jackson's statement is probably the most egregious part of the audiotape. But Jackson testified at trial, and Appellant had the opportunity to confront and cross-examine her. Appellant made no objection to her statements on the audiotape and makes no complaint on appeal regarding the audiotape except the denial of confrontation and cross-examination and bolstering. Jackson's statements are not inadmissible on any of these grounds.

Although it was clearly error to admit the audiotape when there was no expectation that Cox would be present for purposes of confrontation and cross-examination, given the record before us, and with grave reservations about Jackson's statement, we hold that the error was harmless beyond a reasonable doubt.

---

[18]*See Wilson v. State,* 938 S.W.2d 57, 63–64 (Tex. Crim. App. 1996) (Mansfield, J., dissenting), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352, 357 n.26 (Tex. Crim. App. 2002).

**Conclusion**

Having held that the trial court abused its discretion by admitting the audiotape but that its admission was harmless, we overrule Appellant's two issues.

 

 

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

MCCOY, J. filed a concurring opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  July 7, 2011


ABRAHAM GODINEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM COUNTY CRIMINAL COURT NO. 5 OF DENTON COUNTY

----------

## CONCURRING MEMORANDUM OPINION[1]

----------

I concur in the majority's conclusion that any error was harmless, but I write separately because I do not agree that the holding in *Fischer* generally extends to exclude the non-police eyewitness's responses to the 9-1-1 dispatcher's questions about Godinez's behavior made here before the police arrived. *See Fischer v. State*, 252 S.W.3d 375, 387 (Tex. Crim. App. 2008). In

---

[1]*See* Tex. R. App. P. 47.4.

*Fischer*, the court of criminal appeals held that the present-sense-impression exception to the hearsay rule did not apply to a law enforcement officer's factual observations of a suspect that had already been pulled over for a traffic violation, which were contemporaneously dictated on his patrol-car videotape as the officer conducted a DWI investigation. *Id.* Although the court indicated that "factual observations, narrations, opinions, and conclusions made by a citizen or bystander that might be intended by the declarant to be made with an eye toward future litigation or evidentiary use are inadmissible under the [hearsay] rule[,]" I do not agree that the facts of this case demonstrate that the statements that the citizen eyewitness in this case, Cox, made to the 9-1-1 dispatcher regarding Godinez's actions, were made with an eye toward future litigation. *See id.* at 384.

In its analysis, the court of criminal appeals distinguished *Fischer* from *Ohio v. Penland*, 724 N.E.2d 841 (Ohio App. 1998), "a case that appropriately concluded that a radioed recording by an officer in hot pursuit of a fleeing suspect was admissible as a present sense impression," and it noted that the "scenario [in *Penland*]—the description of a chase while it is occurring, transmitted to his dispatcher—[was] precisely the sort of unreflective, uncalculated, non-testimonial 'street-corner' statement that is admissible under Rule 803(1), even when made by a law enforcement officer." *Id.* at 386. The court specifically distinguished the status of the events in *Penland*—statements made by an officer during hot pursuit—from those in *Fischer*—statements made

2

by an officer after the suspect vehicle was stopped by the side of the road while he "carefully and deliberately narrated the results of his DWI field tests and investigation." *Id.*

Here, the record reflects that Cox, who had called 9-1-1 to report Godinez as a possible drunk driver, was still following Godinez and reporting Godinez's actions and current location during his exchange with the 9-1-1 dispatcher. The record also reflects that at the time of this exchange, the police had not yet arrived on scene or intercepted Godinez's vehicle. Thus, the emergency had not yet been contained, and the exchange between Cox and the dispatcher was necessary to ensure that any change in Godinez's route was communicated to the responding officers.

Further, I cannot subscribe to the majority's assertion that "Cox clearly had prosecution in mind when he offered to pull over behind the marked cars to talk to the police." *See* Maj. op. at 6. But even if Cox contemplated Godinez's prosecution when he made the offer, his intentions at that time are not relevant to his earlier exchange with the dispatcher before the police arrived. For these reasons, I concur in the outcome.

BOB MCCOY<br>
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 7, 2011