# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00188-CR

**Lawrence Wilson, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 2020973, HONORABLE JON WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Lawrence Wilson was convicted by a jury for the offense of aggravated robbery. *See* Tex. Pen. Code Ann. § 29.03 (West 2003). The district court assessed punishment and sentenced appellant to twenty years' confinement. Appellant asserts the district court erred by: (1) failing to suppress complainant Jose Castillo's in-court identification of appellant because it was tainted by an impermissibly suggestive out-of-court identification procedure, and (2) refusing to grant a mistrial based on the prosecutor's improper comments about defense counsel during closing argument. We will affirm the conviction.

**BACKGROUND**

On March 15, 2002, between 8:00 p.m. and 10:15 p.m.,[1] complaining witness Jose Castillo was walking within his apartment complex when a black male asked to borrow a cigarette lighter. Castillo indicated that he did not smoke and did not have a lighter.[2] Castillo stood face-to-face and about nine feet away from the black male for approximately fifteen seconds. Castillo testified that the public and residential lighting within the complex provided enough light for him to see what the man looked like.

Shortly after Castillo walked away from the man, he heard the man running toward him from behind. The man put something hard against Castillo's back, said "money, money," and made Castillo turn around. Castillo faced the man and saw that he had a gun. Castillo pulled everything out of his pockets, including his wallet and cell phone. The man took both items and removed the money from the wallet. The man said, "no, more, more," and put the gun in his waistband and his hands in Castillo's pockets. When Castillo moved, the man pointed the gun toward Castillo. Castillo said, "Calm down. Calm down." The man then said, "Okay, go, go." Castillo testified at trial that he was able to see his assailant's face for approximately two minutes during this encounter. Castillo ran home and called 911. When the police officer arrived, Castillo described his assailant as a black man who was thin, about eighteen years old, approximately

---

[1] Castillo testified that he thought he was robbed around 10:00 to 10:15 p.m., but the police report indicates that an officer was dispatched to meet with Castillo at approximately 8:00 p.m.

[2] Castillo did not speak English at the time of the encounter. His trial testimony was taken by translation.

2

Castillo's height,[3] and wearing dark pants and a red and black shirt or sweatshirt.[4]  Castillo also described the pistol that had been used during the robbery.

At about 1:00 a.m., Austin police officers responded to a dispatch call by appellant's girlfriend for an assault with a gun.  The girlfriend directed the police to an apartment near Castillo's apartment complex.  The officers found appellant there and determined that he matched the description of Castillo's assailant.  Officers found in plain view a shotgun, a pistol, a rifle, ammunition, and a cell phone.  The pistol generally matched the description of the pistol used during the robbery of Castillo.  Appellant was taken into custody, and an officer called Castillo and told him that the police had a person in custody who matched Castillo's earlier description of the assailant. The officer also told Castillo the police *might* have the person who robbed him.

Approximately ten minutes later, the officer picked up Castillo and drove him toward his apartment complex's exit, where appellant was being held.  The police turned a spotlight and the high beams of two police cars on to illuminate appellant.  Before Castillo got out of the patrol car, he said, "That's him.  That's him."  Castillo identified appellant as the perpetrator of the robbery and told the officer that he was "one hundred percent sure" that appellant was his assailant.  Castillo also identified his cell phone, which had been found in the apartment.  Castillo later made an in-court

---

[3] Appellant seeks to make an issue of the discrepancies in Castillo's testimony regarding his assailant's height.  The police report indicates that Castillo initially described his assailant as about six-feet tall.  During trial, he described him as six- and eight-feet tall.  The confusion regarding the assailant's height likely stemmed from Castillo's testimony being taken by translation, and his standard unit of measurement being meters, not feet.  Castillo is approximately six-feet tall, and appellant is about five feet and eleven inches tall.  We find that Castillo's general descriptions of his assailant as being about Castillo's "same height" or "a little" taller are sufficiently descriptive.

[4] Castillo later testified at pretrial and trial that his assailant was wearing a red and blue T-shirt.  Appellant was wearing a red and blue T-shirt when he was arrested on the night of the robbery.

identification of appellant as the robber, the recovered cell phone as belonging to him, and the recovered gun as being the type of gun that the robber had used.

Defense counsel's theory of the case was misidentification of appellant as Castillo's robber due to, among other things, improper use of an impermissibly suggestive show-up identification. At pretrial and trial, appellant requested and was denied the suppression of any alleged identification of appellant by Castillo.

Appellant's first point of error is that the district court erred by refusing to suppress Castillo's in-court identification of appellant on the ground that it had been tainted by an impermissibly suggestive show-up identification. In point of error two, appellant contends that the district court erred by failing to grant a mistrial when the prosecutor made improper comments about defense counsel during closing argument.

## DISCUSSION

### Show-Up Procedures

An out-of-court identification procedure may be so suggestive and conducive to mistaken identification that subsequent use of the identification at trial would deny the accused due process of law. *Conner v. State*, 67 S.W.3d 192, 200 (Tex. Crim. App. 2001). To determine whether a subsequent in-court identification is admissible, this Court must go through a two-step analysis. First, we must determine whether the pretrial identification procedure was impermissibly suggestive. *Id.* Second, if we determine the procedure was impermissibly suggestive, we must determine whether the procedure gave rise to a very substantial likelihood of irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188, 198 (1972) (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968));

4

*Conner*, 67 S.W.3d at 200. Appellant must prove these two elements by clear and convincing evidence. *Barley*, 906 S.W.2d 27, 34 (Tex. Crim. App. 1995). If appellant is able to meet his burden of proof, the in-court identification will be inadmissible unless the State can demonstrate by clear and convincing evidence that the in-court identification was of "independent origin." *United States v. Wade*, 388 U.S. 218, 240 n.31 (1967); *see also Herrera v. State*, 682 S.W.2d 313, 318 (Tex. Crim. App. 1984).

Suggestiveness of Show-Up Identification

Suggestive out-of-court identifications are disapproved because they risk violating a defendant's due-process rights by increasing the likelihood that such defendant will be misidentified. *Biggers*, 409 U.S. at 198. Texas cases provide numerous examples of what does and does not constitute impermissible suggestiveness. *See., e.g.*, *Barley*, 906 S.W.2d at 33; *Williams v. State*, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984); *Turner v. State*, 600 S.W.2d 927, 932 (Tex. Crim. App. 1980); *Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.—San Antonio 1998, pet. ref'd); *Tapley v. State*, 673 S.W.2d 284, 286 (Tex. App.—San Antonio 1984, pet. ref'd). These cases indicate that suggestiveness may be created by singling out the defendant in some way. *See Barley*, 906 S.W.2d at 33; *Loserth*, 985 S.W.2d at 543; *Tapley*, 673 S.W.2d at 286.

In *Loserth*, the court found that the display of a single photograph of a defendant to an eyewitness, without any of the traditional safeguards of a lineup or photographic array, was an impermissibly suggestive pretrial identification procedure. 985 S.W.2d at 543. In *Tapley*, the court held that a lineup was impermissibly suggestive where the defendant was the only white male among Mexican-American males in a photographic spread. 673 S.W.2d at 286. Finally, this Court has

5

assumed the impermissibly suggestive nature of an out-of-court identification procedure that involved a show-up where the police indicated to the complainant that they were bringing the defendant "back" to the crime scene to be identified. *Stokes v. State*, No. 03-02-00508-CR, 2003 Tex. App. LEXIS 5096, at *6-7 (Austin June 19, 2003, no pet.) (not designated for publication).

In this case, an officer called Castillo and told him that the police had a person in custody who matched Castillo's earlier description of his assailant. The officer testified at pretrial and trial that he also told Castillo, "We might have somebody in custody right now who may have been the person that robbed [you]." Approximately ten minutes after the telephone conversation, the officer picked up Castillo and drove him to where appellant alone was illuminated by a spotlight and the high beams of two police cars. Assuming without deciding that this out-of-court, one-on-one show-up procedure was impermissibly suggestive, we must now determine whether the circumstances of this case give rise to a substantial likelihood of irreparable misidentification at trial.

Substantial Likelihood of Irreparable Misidentification

Witness identification at trial in the wake of a suggestive out-of-court identification "will be set aside on that ground only if [it is] . . . so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Biggers*, 409 U.S. at 197 (quoting *Simmons*, 390 U.S. at 384); *see also Barley*, 906 S.W.2d at 34. Reliability is the "linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *Barley*, 906 S.W.2d at 35 ("If indicia of reliability outweighs suggestiveness then an identification is admissible.").

Whether an in-court identification is considered reliable despite a suggestive out-of-court confrontation procedure "must be determined 'on the totality of the circumstances.'" *Biggers*, 409 U.S. at 196, 199 (quoting *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967)). The United States Supreme Court has enumerated five, non-exclusive factors ("the *Biggers* factors") to be considered in evaluating the likelihood of misidentification: (1) the opportunity of the complaining witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. *Id.* at 200. Each of the *Biggers* factors is an issue of historical fact that we view deferentially, in a light most favorable to the trial court's ruling. *Loserth*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998). However, the five factors are reviewed *de novo* against "the corrupting effect" of the suggestive out-of-court identification procedure. *Ibarra v. State*, 11 S.W.3d 189, 195-96 (Tex. Crim. App. 1999); *see also Loserth*, 963 S.W.2d at 772.

(1) *Biggers* Factors

    (a) Opportunity for Castillo to View Assailant

Although the robbery occurred at night, the apartment complex was illuminated by large public lights and residential lights on the balconies of several of the apartments. Castillo testified that the light during the robbery was good enough for him to stand outside and read a newspaper. The assailant directed Castillo's attention to him when he asked for a light. Castillo testified that, for approximately fifteen seconds of this initial exchange, he stood face-to-face and about nine feet away from the assailant. Shortly thereafter, the assailant placed a gun in Castillo's

back and had him turn around to again stand face-to-face with the assailant. Castillo was within inches of his assailant's face as the assailant dug through Castillo's pockets to find money. Castillo testified that he was able to see his assailant's face for about two minutes during the second encounter.

(b) Witness's Degree of Attention

Castillo's attention was drawn to his assailant as soon as the assailant asked for a light. There is strong evidence that Castillo paid close attention to the assailant. Castillo told the assailant to only take his money and not his papers. Furthermore, Castillo was only inches away from the assailant when the assailant dug into his pockets for money. Under these facts, Castillo had ample opportunity to focus his attention on appellant.

(c) Accuracy of Description

Castillo gave a fairly detailed description of his assailant to the police. Appellant largely matched Castillo's descriptions of his assailant. On the night of the robbery, Castillo described his assailant as an eighteen-year-old, thin, black male who was about six-feet tall and wearing dark pants and a red and black shirt or sweatshirt. Appellant is a black male and approximately six-feet tall. On the night of the robbery, appellant was about eighteen years old, thin, and wearing dark pants and a red and blue T-shirt. Moreover, appellant was in possession of Castillo's cell phone, which had been taken from Castillo during the robbery, and a pistol that generally matched Castillo's description of the pistol used during the robbery.

(d) Level of Certainty

Castillo was positive in his identification of appellant. He told the police that he remembered the man who robbed him; he immediately recognized appellant upon seeing him illuminated by the police cars' high beams and spotlight; and, finally, Castillo told the police at the time of the out-of-court identification that he was one hundred percent sure that appellant was his assailant.

(e) Length of Time Between Crime and Confrontation

The robbery occurred between 8:00 p.m. and 10:15 p.m. The confrontation occurred approximately three to five hours after the robbery. Castillo's memory at the time of identification was likely exceptionally fresh and intense. *See Biggers*, 409 U.S. at 201 (finding no substantial likelihood of misidentification where confrontation occurred seven months after crime); *Webb v. State*, 760 S.W.2d 263, 273 (Tex. Crim. App. 1988) (finding no substantial likelihood of misidentification where confrontation occurred five months after crime).

(2) Weighing *Biggers* Factors Against Corrupting Effect of Out-of-Court Identification

Having reviewed the *Biggers* factors, we now weigh those factors against the allegedly corrupting influence of the suggestive out-of-court identification. *See Brown v. State*, 64 S.W.3d 94, 102 (Tex. App.—Austin 2001, no pet.); *Loserth*, 963 S.W.2d at 774. In this case, there is an overall high reliability factor associated with Castillo's identification of appellant. In addition, there is other evidence linking appellant to the crime. Specifically, the police found Castillo's cell phone in appellant's possession, and Castillo's description of his assailant's weapon essentially matched the pistol in appellant's possession on the night of the crime. We find that the reliability

9

of Castillo's identification, coupled with other evidence indicative of appellant's culpability, outweighs any corrupting effect of the suggestive one-on-one show-up procedure. Because appellant did not prove by clear and convincing evidence that the out-of-court identification procedure gave rise to a substantial likelihood of irreparable misidentification, we hold that the district court did not err in admitting Castillo's in-court identification of appellant. Appellant's first point of error is overruled.

**Improper Jury Argument**

In point of error two, appellant contends that the district court erred by failing to grant a mistrial when the prosecutor made improper jury argument that struck at appellant over the shoulders of defense counsel. The following remarks occurred during the prosecutor's closing argument in the guilt-innocence phase of the trial:

> [Prosecutor]: It's clear from the evidence that [appellant] is a dangerous man. There is no question about that. The defense has told you that they're not happy with the State's case. Well, they are paid not to be happy with the State's case. Of course they're not. But, imagine how happy Mr. Adkins and Mr. Green would be if this jury, hearing the evidence that you've heard—not just eyewitness evidence, but all the other evidence, the cell phone being found in the apartment the defendant was coming out of, that he ran from the police, that he threw down a gun with a chambered bullet. How happy would they be if they could walk out of here and tell their brother defense attorneys that—
>
> [Defense Counsel Green]: Your Honor, we object to that. May we approach? I mean, she's attacking the defendant through counsel, and I'm not sure that's—
>
> (At the bench, on the record)
>
> [Prosecutor]: But I think that's invited argument. They were talking about how happy the cops would be if somebody was illegally convicted of a robbery.
>
> [Defense Counsel Adkins]: Could we keep our voices down? I never said that.

10

The Court:  You should not refer to the defense bar.  It's not safe.

[Defense Counsel Green]:  I'd like to move that a mistrial be granted.

[Defense Counsel Adkins]:  We object to the striking at the defendant over the shoulder of defense counsel.

The Court:  We'll sustain the objection.

[Defense Counsel Green]:  We'd ask that the jury be instructed to disregard that.

The Court:  I'll do that.

[Defense Counsel Adkins]:  We'll move for a mistrial.

The Court:  We'll deny that.

[Defense Counsel Adkins]:  Thank you, Judge.

(Within the presence and hearing of the jury.)

The Court: We'll ask the jurors to base your verdict, once again, just on the evidence and not on argument of counsel.

[Defense Counsel Green]:  And I move for a mistrial, Your Honor.

The Court:  That request will be denied.

The State contends that the prosecutor's argument was permissible because it responded to the defense counsel's argument by essentially pointing out to the jury that they should not expect the defense counsel to concede the State has a good case.  The State emphasizes the following excerpts from defense counsel's argument:

> I think there's a real tendency to try to make these things as simple as possible.  To say, "Look, here he is."  Castillo got on the stand.  We got the gun.  We got the shirt.  We got the cell phone.  What do you want us to do?  How simple could this be?

* * * *

11

This whole process from the minute Mr. Castillo called the police until now has been designed to arrive at a foregone conclusion. And what I want to talk about before Mr. Green goes over the evidence is the enormous pressure that's on everyone in this case. That's on Mr. Castillo, that's on the police, and that ultimately is on you to make this as easy as possible.

. . . But Mr. Castillo is not someone who is reliable enough, no matter how hard he tries, for you to base a felony conviction upon.

. . . Mr. Castillo wants this to come out the right way, and that's what he said.

\* \* \* \*

So everybody has decided to come to a conclusion that makes everybody feel good. You think, the police feel good if they catch an armed robber? Yeah. Of course they do. They ought to. You think Mr. Castillo feels good when the cops come and say, "Hey, Buddy, guess what. The system worked. We got the guy." Of course he does. You're the ones who have to be skeptical.

Permissible jury argument falls within one of four general categories: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) responses to opposing counsel's argument, and (4) pleas for law enforcement. *Coleman v. State*, 881 S.W.2d 344, 358 (Tex. Crim. App. 1994); *Borjan v. State*, 787 S.W.2d 53, 55 (Tex. Crim. App. 1990). Even when the argument exceeds these permissible bounds, it will not constitute reversible error unless it: (1) violates a statute, (2) injects a new and harmful fact into the case, or (3) is manifestly improper, harmful, and prejudicial to the rights of the accused. *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980). In this case, appellant contends that the prosecutor's argument was manifestly improper because it struck at appellant over the shoulders of his counsel.

It is axiomatic that the State may not strike at a defendant over the shoulders of his or her counsel or personally attack the integrity of defense counsel. *Wilson*, 938 S.W.2d at 59-60;

12

*Hughes v. State*, 878 S.W.2d 142, 159 (Tex. Crim. App. 1992); *Summers v. State*, 182 S.W.2d 720, 721-22 (Tex. Crim. App. 1944). In that regard, the Texas Court of Criminal Appeals has expressed "a special concern for final arguments that result in uninvited and unsubstantiated accusations of improper conduct directed at a defendant's attorney." *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998); *Orona v. State*, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990); *Gomez v. State*, 704 S.W.2d 770, 771 (Tex. Crim. App. 1985). The court deems this type of argument most egregious when it involves accusations of manufactured evidence, *see Orona*, 791 S.W.2d at 128-29, or an attempt to contrast the ethical obligations of prosecutors and defense attorneys. *See, e.g.*, *Wilson*, 938 S.W.2d at 60; *Bell v. State*, 614 S.W.2d 122, 123 (Tex. Crim. App. 1981); *Lewis v. State*, 529 S.W.2d 533, 534 (Tex. Crim. App. 1975). The prosecutor's argument in this case was milder, referencing neither manufactured evidence nor differing ethical obligations; nevertheless, the prosecutor's argument did refer to defense counsel personally and suggested that defense counsel would be happy to get the defendant "off the hook" despite incriminating evidence.

Prosecutors risk improperly striking at the defendant over counsel's shoulder when making arguments "in terms of defense counsel personally and when the argument explicitly impugns the defense counsel's character." *Mosley*, 983 S.W.2d at 259 (assuming inappropriateness of prosecutor's argument that referred to defense counsel personally and suggested defense counsel wanted to divert jury from truth); *see also Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995) (indicating impropriety of rebutting defense counsel's argument with comments that "cast aspersion on defense counsel's veracity with the jury"). However, we conclude that the prosecutor's argument in this case was a permissible response to the defense counsel's prior argument. Further, even if the argument was improper, it was not so egregiously prejudicial as to warrant a mistrial.

13

The prosecutor's comments were mild, the court took curative measures, and there was strong evidence supporting appellant's conviction absent any potential impropriety of the prosecutor's comments. *See* Tex. R. App. P. 44.2(b); *Mosley*, 983 S.W.2d at 259 (finding harmless error where prosecutor's comments were mildly improper, court took no curative action, and strong evidence supported conviction); *see also Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000) (finding harmless error where prosecutor's comments were mildly improper, court gave no curative instruction, and strong evidence supported conviction). We therefore overrule appellant's second point of error contending that the district court erred by failing to grant a mistrial based on the prosecutor's comments.

## CONCLUSION

We conclude that the district court did not err in (1) denying appellant's motion to suppress the in-court identification by Castillo or (2) failing to grant a mistrial based on the prosecutor's comments about defense counsel during closing argument. We therefore affirm the district court's judgment of conviction.

_____

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: April 29, 2004

Do Not Publish

14