NUMBER 13-02-311-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

                                                                                                                     


 

LUCAS SANCHEZ,                                                                          Appellant,

 

                                                             v.

 

THE
STATE OF TEXAS,                                                                  Appellee.

                                                                                                                                      


      On appeal
from the 148th District Court of Nueces County, Texas.

                                                                                                                     


 

                               MEMORANDUM
OPINION

 

                       Before
Justices Hinojosa, Yañez, and Castillo

                            Memorandum
Opinion by Justice Yañez

 

 

On March 8, 2002, following a jury trial, appellant,
Lucas Sanchez, was found guilty








of murder[1]
and sentenced to 80 years= imprisonment in the Texas Department of Criminal
JusticeBInstitutional Division.  The trial court fined him $7,500.00 and
assessed court costs at $3,180.42.[2]  

By four issues, appellant claims  (1) the evidence is legally insufficient to
support his conviction, (2) the evidence is factually insufficient to support
his conviction,  (3) he was denied a fair
jury trial because the State portrayed his trial counsel as a Afertilizer salesman,@ and
(4) ineffective assistance of counsel. 
We affirm.

In his first two issues, appellant argues that the
evidence is legally and factually insufficient to support his conviction.  

Legal sufficiency of the evidence is measured
against the elements of the offense as defined by a hypothetically correct jury
charge for the case.[3]  Such a charge would accurately set out the
law, be authorized by the indictment, and would not unnecessarily increase the
State=s burden of proof.[4]  

A. Legal Sufficiency

Appellant maintains that the State failed to prove
all the elements of murder beyond a reasonable doubt because Ano one saw the appellant shoot the deceased.@ 








When reviewing the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.[5]  We are not fact finders; our position is that
of a due process safeguard to ensure only the rationality of the trier of fact=s finding of the essential elements of the offense
beyond a reasonable doubt.[6]

In this case, count one, paragraph one of the
indictment charged that appellant Aon or about December 21, 1998, in Nueces County,
Texas, did then and there intentionally and knowingly cause the death of an
individual, Johnny Garcia, by shooting Johnny Garcia with a firearm.@[7]  According to
count one, paragraph one, the State had the burden of proving beyond a
reasonable doubt that appellant intentionally and knowingly caused Johnny=s death by shooting him with a firearm.  

Additionally, count one, paragraph two charged that
appellant Aon or about December 21, 1998, in Nueces County,
Texas, did then and there with the intent to cause serious bodily injury to an
individual, Johnny Garcia, do the act of shooting him with a firearm; that this
act was clearly dangerous to human life; and that this act caused the death of
Johnny Garcia.@[8]  Thus, the
State had to prove that appellant, with the intent to cause serious bodily
injury to Johnny, shot Johnny, causing his death.

Here, the record establishes that Johnny=s death was a homicide that resulted from multiple
gun shot wounds, with the fatal wound severing his spinal cord.  Although appellant maintains that no one saw
him shoot Johnny, in viewing the evidence in the light most favorable to the
verdict, ample evidence exists to support the jury=s finding of all of the elements of murder beyond a
reasonable doubt.








According to Ida Salinas, Johnny=s girlfriend, on past occasions appellant had said
to Johnny, AI don=t fight.  I
shoot.  I kill,@ which in part, made her fearful of appellant. On
December 21, 1998, during a barbeque at appellant=s
residence, appellant and Johnny were involved in a verbal and physical
altercation with one another. During the incident, Ida claims that appellant
was visibly angry.  

After the altercation, Ida and Johnny left appellant=s residence and returned to Ida=s mother=s home, where she and Johnny lived.   Ida=s mother, Anita Salinas, testified that appellant
later arrived at her residence.  As
Anita, Ida, and Johnny were on the front porch of Anita=s residence, appellant approached Anita=s home and taunted Johnny to come forward.  In fear for all of their lives, Anita and Ida
told Johnny not to leave the porch. 
Johnny, who was unarmed, then began to walk toward appellant.  Ida and Anita went inside the house and
called 911.  Seconds later, three gun
shots were heard.                  

Shortly thereafter, police arrived and found Johnny
laying on the front yard.  Police
determined that he was dead and had been shot three times.  Near Johnny=s
body, police recovered an ejector rod[9]
and a black-handled knife.  Ida told
officers that the items belonged to appellant. 
Ida also provided police with a description of appellant and told police
that appellant shot Johnny. 

Shortly after the shooting, appellant was arrested
at a nearby convenience store.  He had
fresh blood on his shirt, jeans, and tennis shoes, and was in possession of a
blood-stained pocket knife.  Officer
Richard Garcia testified that on the morning after the shooting, he found a .44
caliber revolver in a nearby neighborhood yard. 
According to Garcia, the revolver was missing its ejector rod. 








At trial, an expert testified that DNA testing of
blood found on the revolver positively matched to appellant.  The expert also indicated that DNA tests
showed that the shirt worn by Johnny at the time of his death contained ADNA consistent with [appellant].@ 

Additionally, a firearms expert testified that the
ejector rod found near Johnny was consistent with the type of rod used in the
revolver found by Officer Garcia. 
According to the firearms expert, tests also showed that a bullet jacket
found on the sidewalk at the crime scene and a bullet found in the window sill
matched the revolver recovered by Officer Garcia.  

In reviewing the evidence, the record supports that
(1) appellant was present shortly before the shooting, (2) seconds before the
shooting, Johnny left the porch and approached appellant, (3) blood found on
the revolver matched appellant=s blood, (4) bullets retrieved from the scene
matched the revolver found near the scene, and (5) appellant had a physical
altercation with Johnny prior to the shooting. 
In viewing the evidence in the light most favorable to the verdict, we
conclude that a rational juror could have found beyond a reasonable doubt that
the State established all of the elements of murder.[10]  Appellant=s
first issue is overruled.

B. Factual Sufficiency 

Appellant claims the evidence is factually
insufficient because appellant did not admit to shooting Johnny nor did anyone
witness the actual shooting.  Appellant
therefore claims that Johnny could have been shot by Aany drive-by shooter.@








In a factual sufficiency review, the evidence is
viewed in a neutral light, favoring neither party.[11]  In this neutral light, we determine whether
the Aproof is so obviously weak as to undermine
confidence in the jury=s determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.[12]  A clearly wrong and unjust verdict occurs
where the jury=s finding Ashocks the conscience@ or Aclearly demonstrates bias.@[13]  We are
authorized to disagree with the fact finder=s
verdict even if probative evidence exists that supports the verdict.[14]  

Viewed in a neutral light, we conclude that the
proof of guilt in this case is not so obviously weak as to undermine confidence
in the fact-finder=s determination.[15]  The trier of fact is the sole judge of the
witnesses= credibility and the weight to be given to their
testimony, and it is free to accept or reject all or any part of the testimony
of any witness.[16]  Accordingly, appellant=s second issue is overruled.

C.  Improper
Jury Argument

In appellant=s third issue, he claims he was denied a fair jury
trial because the State made an improper jury argument.  Appellant claims specifically that during
closing arguments, the prosecutor called appellant=s trial counsel a Afertilizer
salesman.@ 
Consequently, appellant claims the State=s
argument denied him a fair jury trial. 
In response, the State claims it did not make an improper jury
argument.  The State contends that it
simply provided an answer to appellant=s trial counsel and error, if any, was harmless.








An assertion of improper jury argument requires us
to review the record in its entirety to determine whether any erroneous
statements were made, and if so, whether they were so prejudicial as to deprive
appellant of a fair and impartial trial.[17]  There are four permissible areas of jury
argument: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to argument of opposing counsel; and (4) plea for law
enforcement.[18]  An argument which exceeds these bounds is
error, but only becomes subject to reversal if, in light of the record as a
whole, the argument is extreme or manifestly improper, violative of a mandatory
statute, or injects new facts harmful to the accused into the trial.[19]  The use of an analogy to emphasize or explain
evidence is acceptable.[20]  Counsel is allowed wide latitude to draw
inferences from the evidence so long as the inferences drawn are reasonable,
fair, legitimate, and offered in good faith.[21]        During
closing arguments, appellant=s trial counsel told the jury that the State would
say that appellant=s trial counsel was just giving the jury Arabbit trails.@  Appellant=s trial counsel also argued that Ahe was just talking about the evidence@ and later stated, A[t]his
isn=t [appellant=s trial counsel] talking about the moon and stars.@  Shortly
thereafter, the following exchange ensued: 








State: [Appellant=s
Trial Counsel] has gotten up there and done a very good job of trying to say
his theory to youBactually, multiple theoriesBand, you know, I was listening to it, and his
theories kind of remind me of a fertilizer salesman, you know, spreading those
samples out there and see what grows from them. 


 

Appellant=s Trial Counsel: Your Honor, I object to that
comment of me being a fertilizer salesman. 
I don=t think that=s a proper summation of the evidence in the case,
and it=s trying to get the defendant found guilty based on
my failures as a fertilizer salesman.  

 

Court: Sustained.

 

State: He puts a lot of theories out to see what you=ll bite on.  

 

Appellant=s Trial Counsel: Same objection, your Honor.  It=s not myBit is not a proper summation of the evidence in the
case to criticize me and to say that something I=ve
done is evidence that should be used to convict the defendant.  

 

State: Judge, my comments were not directed at
[appellant=s trial counsel]. 
I said his theories

 

Court: Overruled. 
This is closing argument.  

 

After considering the argument and the record as a
whole, we cannot say the argument is extreme or manifestly improper, violative
of a mandatory statute, or injects new facts harmful to the accused into the
trial.  We do not construe the statements
as improper.  Rather, the argument was in
response to an argument made by appellant=s trial counsel.[22]  Accordingly, we overrule appellant=s third issue. 


D. 
Ineffective Assistance of Counsel

By appellant=s fourth issue, he claims the trial court abused its
discretion in failing to conduct a hearing on his motion for new trial on the
basis of ineffective assistance of trial counsel.  








As noted, we abated this appeal and ordered the
trial court to conduct a hearing regarding appellant=s motion for new trial alleging ineffective
assistance of counsel.  A hearing was
held December 16, 2005.  Accordingly, we
now consider the merits of appellant=s allegation of ineffective assistance of
counsel.   

Strickland v. Washington[23] sets forth the standard of review for effectiveness
of counsel, and requires a two‑part inquiry.[24]  The defendant must first show that counsel's
performance was deficient, in that it fell below an objective standard of
reasonableness.[25]  Second, the defendant must prove there is a
reasonable probability that, but for counsel's deficient performance, the
result of the proceeding would have been different.[26]  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.[27]

The determination regarding whether a defendant
received effective assistance of counsel must be made according to the facts of
each case.[28]  An appellate court looks to the totality of
the representation and the particular circumstances of the case in evaluating
counsel's effectiveness.[29]








The appellant bears the burden of proving by a
preponderance of the evidence that counsel was ineffective.[30]  There is a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance.[31]  To defeat the presumption of reasonable
professional assistance, "any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness."[32]  Generally, the record on direct appeal will
be insufficient to show that counsel's representation was so deficient as to
meet the first part of the Strickland standard.[33]

Mere allegations that counsel failed to investigate
or discuss the case with appellant are insufficient to raise an ineffectiveness
claim.[34]  An appellant must show what an investigation
would have revealed.[35]


The record shows that appellant=s motion for new trial was timely filed, presented
to the trial court, and supported by an attorney=s
affidavit.  Appellant cited several
reasons in support of his ineffectiveness claim.  Specifically, appellant argued that his trial
counsel (1) filed several inapplicable discovery requests, (2) failed to
properly investigate the case prior to trial, (3) failed to timely communicate
plea offers, and (4) failed to call witnesses to attest to appellant=s good character. 

At the new trial hearing, appellant and his trial
counsel testified regarding the allegation of ineffective assistance of
counsel.  Unsurprisingly, their testimony
conflicted on almost every issue.  








Appellant testified that his trial counsel utilized
a defensive theory at trial that was inconsistent with the facts of his
case.  Specifically, his trial counsel
theorized at trial that the murder may have been committed by a drive-by
shooter.  According to appellant, he had
previously informed his counsel that the shooting occurred in
self-defense.  Appellant also testified
that his trial counsel promised him that he would prevail at trial.  However, appellant also stated that he
considered his trial counsel Aa good attorney.@   Finally, appellant claimed that his trial
counsel untimely informed him of a plea offer. 
According to appellant, by the time he learned of the offer, the
prosecutor had withdrawn the offer.  

Appellant=s trial counsel testified that he met with appellant
at least five times during the course of his representation.  Counsel testified that he never guaranteed or
promised any results to appellant. 
Counsel confirmed that it was his practice to file boilerplate discovery
requests to ensure that discovery deadlines are met, issues are preserved, and
to guarantee that nothing is missed in cases. 
Counsel also testified that part of his defensive theory was to suggest
that a drive-by shooter may have been responsible for the shooting, which was
consistent with the police dispatcher=s log that indicated that the incident was a
drive-by shooting.  Counsel further
testified that he informed appellant of the plea offer the night before trial,
and that appellant had one day to consider the State=s plea offer, which he ultimately rejected.  Finally, counsel claimed that he elected not
to call any character witnesses because he was concerned about opening the door
to character attacks on appellant.  








Appellant has failed to show what any further
investigation by his trial counsel would have revealed.[36]   Appellant has also failed to demonstrate
that the discovery requests or counsel=s decision not to call character witnesses fell
below an objective standard of reasonableness.[37]  Additionally, despite counsel=s delayed communication concerning the plea offer,
appellant nevertheless considered the offer overnight, and ultimately elected
to decline the offer.[38]  After reviewing the record, including
appellant's motion for new trial, and testimony from appellant and his former
trial counsel, we conclude appellant has failed to show that his attorney=s performance fell below an objective standard of
reasonableness, and failed to demonstrate the existence of a reasonable
probability that, but for his counsel's alleged deficient performance, the
result of the proceeding would have been different.[39]  Accordingly, appellant=s fourth issue is overruled. 

Having overruled all of appellant=s issues, the judgment of the trial court is
affirmed.  

 

                                                             
                                                        

LINDA REYNA YAÑEZ,

Justice

 

 

 

Do
not publish.  Tex. R. App. P. 47.2(b).

 

Memorandum
opinion delivered and filed 

this
the 18th day of May, 2006.











[1]  See Tex.
Pen. Code Ann. _ 19.02 (Vernon 2003).  





[2] 
After his conviction, appellant timely filed a motion for new trial and
notice of appeal.  On appeal, he argued, inter
alia, ineffective assistance of counsel because the court improperly denied
him a hearing on his motion for new trial. 
We issued an order abating the appeal so the trial court could conduct a
hearing on the motion, which was held on December 16, 2005.  After the trial court considered the
arguments presented, it issued a January 25, 2006 order denying appellant=s motion for new trial.  On February 14, 2006, the reporter=s record of the hearing was filed
with this Court. 





[3] 
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997).  





[4] 
See id. 





[5] 
See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Kutzner v.
State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).





[6] 
See Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1998).  





[7] 
See Tex. Pen. Code Ann. _ 19.02(b)(1) (Vernon 2003).





[8] 
See Tex. Pen. Code Ann. _ 19.02 (b)(2) (Vernon 2003).





[9] 
An ejector rod is a component of a revolver.  





[10] 
See Jackson, 443 U.S. at 319; Kutzner, 994 S.W.2d at 184.





[11] 
See Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).  





[12] 
See Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  





[13] 
See Santellan v. State, 939 S.W.2d 155, 164-65 (Tex. Crim. App.
1997).  





[14] 
See id. at 164; see also Johnson, 23 S.W.3d at 7. 





[15] 
See Johnson, 23 S.W.3d at 11. 






[16]  See Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  





[17] 
See Willis v. State, 785 S.W.2d 378, 385 (Tex. Crim. App.
1989).  





[18] 
See Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996); Gaddis
v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  





[19] 
See Felder v. State, 848 S.W.2d 85, 94-95 (Tex. Crim. App.
1992).  





[20] 
See Broussard v. State, 910 S.W.2d 952, 959 (Tex. Crim. App.
1995).  





[21] 
Gaddis, 753 S.W.2d at 398. 





[22] 
See Wilson, 938 S.W.2d at 59.





[23] 
Strickland v. Washington, 466 U.S. 668, 687 (1984).





[24] 
See Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).





[25] 
Id.





[26]  Id.





[27] 
Id.





[28] 
Id.





[29] 
Id.





[30] 
Id. at 813.





[31] 
Id.





[32] 
McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996).





[33] 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).





[34] 
See Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994)
(en banc).





[35] 
Id.





[36]  Id. 





[37] 
See Thompson, 9 S.W.3d at 812.





[38] 
Id.





[39] 
Id.