ACCEPTED
05-14-00452-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
5/14/2015 4:31:20 PM
LISA MATZ
CLERK

5th Court of Appeals
FILED: 5/14/15
Lisa Matz, Clerk

No. 05-14-00452-CR
No. 05-14-00453-CR

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
5/14/2015 4:31:20 PM
LISA MATZ
Clerk

# IN THE COURT OF APPEALS
# FOR THE FIFTH DISTRICT OF TEXAS
# AT DALLAS

## MICHAEL WAYNE WILLIAMS, APPELLANT

v.

## THE STATE OF TEXAS, APPELLEE

*On Appeal from the Criminal District Court No. 3 of Dallas County, Texas*
*In Cause Nos. F13-71062-J and F13-56255-J*

## STATE'S BRIEF

SUSAN HAWK
CRIMINAL DISTRICT ATTORNEY
DALLAS COUNTY, TEXAS

*Counsel of Record:*

SHELLY O'BRIEN YEATTS
ASSISTANT DISTRICT ATTORNEY
STATE BAR NO. 24033487
FRANK CROWLEY COURTS BUILDING
133 N. RIVERFRONT BOULEVARD, LB-19
DALLAS, TEXAS 75207-4399
(214) 653-3625
(214) 653-3643 *fax*

*Attorneys for the State of Texas*

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .................................................................................iv

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT OF FACTS ................................................................................. 2

SUMMARY OF ARGUMENT............................................................................ 8

ARGUMENT......................................................................................................9

RESPONSE TO WILLIAMS'S FIRST AND SECOND POINTS OF ERROR................ 9

> **Defense counsel invited the prosecutor's argument at trial; therefore, the trial court's denial of Williams's request for an instruction to disregard the argument and denial of his motion for mistrial were not improper. Alternatively, the trial court did not err by refusing to specifically instruct the jury to disregard the prosecutor's comment because, although the trial court sustained Williams's objection, the request for an instruction was untimely. The trial court had already generally instructed the jury to disregard any arguments not supported by the evidence. Additionally, the trial court did not abuse its discretion by denying Williams's request for a mistrial.**

RESPONSE TO WILLIAMS'S THIRD AND FOURTH POINTS OF ERROR

AND

THE STATE'S CROSS-POINT TO REFORM THE JUDGMENTS TO REFLECT WILLIAMS'S PLEAS OF "NOT TRUE" AND THE TRIAL COURT'S FINDINGS OF "TRUE" ON THE FIRST ENHANCEMENT PARAGRAPHS... 19

> **Based on the whole record, Williams was not sentenced outside the applicable range of punishment, his sentence is not illegal or void, and there was no error. Moreover, this Court should reform the written judgments to reflect that Williams pleaded "not true" to the first enhancement paragraphs in both cases and the trial court found those enhancements to be true.**

PRAYER ...............................................................................................................32

CERTIFICATE OF SERVICE ...............................................................................32

CERTIFICATE OF COMPLIANCE ......................................................................32

# INDEX OF AUTHORITIES

**Cases**

*Asberry v. State,*
  813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd) .....................20, 31

*Berry v. State,*
  233 S.W.3d 847 (Tex. Crim. App. 2007) ......................................................................15

*Bigley v. State,*
  865 S.W.2d 26 (Tex. Crim. App. 1993) ......................................................................20

*Cruz v. State,*
  225 S.W.3d 546 (Tex. Crim. App. 2007) ......................................................................13

*Darden v. Wainwright,*
  477 U.S. 168 (1986) ......................................................................12

*Davis v. State,*
  No. 09-01-070-CR, 2001 Tex. App. LEXIS 8075 (Tex. App.—Beaumont
  Dec. 5, 2001, pet. ref'd) (not designated for publication) .............................. 12

*Ex parte Pena,*
  71 S.W.3d 336 (Tex. Crim. App. 2002) ......................................................................20

*Ex parte Rich,*
  194 S.W.3d 508 (Tex. Crim. App. 2006) ......................................................................20

*Garner v. State,*
  858 S.W.2d 656 (Tex. App.—Fort Worth 1993, pet. ref'd)....................................19, 26

*Johnson v. State,*
  Nos. 05-10-00465/00608-CR, 2011 Tex. App. LEXIS 6208 (Tex. App.—Dallas
  Aug. 10, 2011, no pet.) (memo op., not designated for publication) .....................30, 31

*Mapes v. State,*
  187 S.W.3d 655 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd)..........................20

*McGinn v. State,*
  961 S.W.2d 161 (Tex. Crim. App. 1998) ......................................................................13

*Mizell v. State,*
  119 S.W.3d 804 (Tex. Crim. App. 2003) (en banc).....................................................20

*Reed v. State,*
  500 S.W.2d 497 (Tex. Crim. App. 1973) ...................................................................20

*Seeker v. State,*
  186 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) ...................20, 21, 27

*Turk v. State,*
  867 S.W.2d 883 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) ......................30, 31

*Wesbrook v. State,*
  29 S.W.3d 103 (Tex. Crim. App. 2000) ....................................................................12

*Wilson v. State,*
  938 S.W.2d 57 (Tex. Crim. App. 1996), *abrogated on other grounds by*
  *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002) .....................................12

**Statutes**

Tex. Penal Code Ann. § 12.33(a) (West 2011) .................................................................27

Tex. Penal Code Ann. § 12.42(d) (West Supp. 2014) ......................................................27

Tex. Penal Code Ann. § 29.02(a)(2), (b) (West 2011) .....................................................27

**Rules**

Tex. R. App. P. 33.1 ..........................................................................................................14

Tex. R. App. P. 33.1(a) .........................................................................................13, 19, 26

TO THE HONORABLE COURT OF APPEALS:

The State of Texas submits this brief in response to the brief of Appellant, Michael Wayne Williams.

## STATEMENT OF THE CASE

Williams pleaded not guilty to two charged offenses for the robberies of Holly Harris and Debra Patterson. (CR1: 80; CR2: 81; RR3: 16-18; RR5: 20-21).[1] The State alleged two enhancement paragraphs in each indictment. (CR1: 10; CR2: 9). Prior to trial, the court granted the State's request to strike the second enhancement paragraphs (which were identical) (CR1: 88; CR2: 90), and the State filed its notice of intent to enhance with a different prior felony conviction for burglary of a building (RR3: 13-15; CR1: 83; CR2: 89).

The two robbery cases were tried together, and the jury found Williams guilty of both offenses. (CR1: 78; CR2: 81; RR6: 36). He elected to have the trial court assess punishment and pleaded not true to the enhancement paragraphs in each case. (CR1: 12; CR2: 11; RR6: 39-40). The State offered and the trial court admitted certified judgments reflecting Williams's convictions for the cases identified in the enhancement paragraphs. (SX 32, 35).

---

[1] CR1 refers to the clerk's record in cause number F13-56255-J, appellate number 05-14-00453-CR. CR2 refers to the clerk's record in cause number F13-71062-J, appellate number 05-14-00452-CR.

The trial court was silent regarding any oral findings on the enhancement paragraphs. The trial court did, however, note findings of "true" to the enhancement paragraphs on the docket sheets of both cases. (CR1: 9; CR2: 8). The court assessed Williams's punishment for each offense at 50 years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. (CR1: 80; CR2: 81; RR6: 83-84). On the first enhancement paragraphs, the written judgments reflect "N/A" regarding Williams's pleas and the court's findings; the judgments reflect pleas of "not true" and findings of "true" on the second enhancement paragraphs. (CR1: 80; CR2: 81).

This appeal followed, in which Williams claims (a) the trial court erred in denying his requests for a jury instruction and a mistrial after the prosecutor made an allegedly improper closing argument, and (b) the trial court assessed illegal sentences in both cases.

## STATEMENT OF FACTS

At about noon on Memorial Day in 2012, Williams robbed the employees and customers of "Emeralds to Coconuts," in a boutique in Dallas. (RR5: 22, 27-28). Holly Harris, the manager, was assisting a customer when Williams entered the store. (RR5: 22, 28-29). Harris exchanged greetings with Williams. (RR5: 28-29, 48). She noticed an unusual look on Williams's face, "like [] he was [] getting amped up for something," when he pulled out a gun, waved it around, and

said, "All you bitches get on the floor."[2]  (RR5: 29, 49, 53, 76).  The two employees and customers followed his instructions.  (RR5: 30).

Three friends, Jana Caryol, Debra Patterson, and Rhonda McCollum were shopping in the store that day.  (RR5: 60, 75, 89).  Caryol testified that she also heard Williams instruct them, "Bitches, get down on the floor."  (RR5: 61).

While he continued waving the gun, Williams yelled at the people in the store to remove their jewelry and to throw their money and jewelry onto the floor. (RR5: 30, 61, 76).  Caryol testified that Williams stood right in front of her, pointed the gun at her face, and said, "Bitch, get down on the floor.  Give me your money and your jewelry."  (RR5: 62, 64, 71, 77).  Patterson testified that when she first heard a man say, "You bitches get down on the ground now; I want all your jewelry and money," she thought it might be a joke, but when she turned Williams was pointing his gun at her.  (RR5: 76, 88).  She testified she was "scared for [her] life."  (RR5: 86).

The employees and customers did as they were instructed.  (RR5: 30-31, 62, 76-77).  Harris described the gun to the jury as "black, gray, silvery, dark-charcoal colored."  (RR5: 31).  During the robbery Williams instructed Harris to move from the rear of the store to the front, saying, "No, you, bitch, you come up here."

---

[2] Investigation later revealed that what appeared to be a real gun was actually a BB gun.  (RR5: 96, 111, 135-136).

3

(RR5: 30). She crawled to the front as instructed and laid flat on her belly; she believed she was going to die. (RR5: 31, 49-50, 55). Caryol testified that while she was removing her rings and throwing them onto the floor, she believed she and her friends were going to die because Williams repeatedly yelled, "Get down or I'll pop you." (RR5: 63, 77).

Leon Haley, a customer, tried to reason with Williams, saying, "don't do this." (RR5: 31, 64-65, 77). Haley then tackled Williams, and the two men wrestled on the floor. (RR5: 32, 64, 78-79). As they wrestled, Williams dropped his cell phone. (RR5: 35, 43; SX 11). A piece of Williams's gun fell off, and Harris picked it up. (RR5: 32, 40, 44; SX 13, 14, 19). At some point, Haley was on the ground and Williams was in an upright position; Williams pointed the gun at Haley and said, "You better run," and Haley exited the store. (RR5: 32-33).

Williams started to leave, but he returned and frantically gathered some of the jewelry and money from the floor. (RR5: 33, 66, 81-82). Patterson testified that when Williams complained there was no money, she slung her billfold out onto the floor and he grabbed it. (RR5: 82). Williams then fled on foot. (RR5: 34). The women in the store called the police; meanwhile, Haley had gone to a nearby store and called the police. (RR5: 34, 36, 67, 85). Williams was in Emeralds to Coconuts for about ten or fifteen minutes. (RR5: 41).

4

The police arrived at the scene in less than five minutes. (RR5: 36, 67, 85, 92, 103). Haley returned to the store; he had sustained some injuries in the altercation with Williams, and Harris treated his injuries and provided first aid supplies. (RR5: 37, 41, 43, 67, 85; SX 11, 12).

The police collected the evidence Williams left behind, consisting of a BB pistol slide and a cell phone. (RR5: 94, 96, 110-111; SX 19, 20, 28, 29). The officers determined that the gun used in the robbery was a Daisy BB gun based on the slide. (RR5: 96, 111, 135-136; SX 19). Within hours of the robbery, Detective Cayce Shelton identified Williams as a suspect through his investigation into the phone number of the cell phone dropped at the scene. (RR5: 111-113, 119; SX 20).

On the day of the robbery, Harris viewed a six-person photo lineup at the police station. (RR5: 37-39, 120-121; SX 3, 4). The lineup procedure was video recorded and admitted into evidence. (RR5: 121; SX 3). Harris identified Williams during the lineup procedure as the robber. (RR5: 39-40, 54-55, 121; SX 3, 4). She testified at trial that she had a number of opportunities to view the robber while he was in the store, and when he picked up her jewelry, she saw his face at a distance of only a foot and a half. (RR5: 54). She also testified that her identification of him in the courtroom was based on her memory of seeing him in the store. (RR5: 55).

5

That evening, police officers arrested Williams. (RR5: 97-98, 103-105, 122-123). Officer James Brown testified that at the time of the arrest Williams had two pawn tickets, a gold earring, and a ring on his person; one pawn ticket, however, blew away. (RR5: 98-99, 124, 127; SX 17 (pinky ring), 18 (earring), 21 (pawn ticket), 25 (photograph). The earring in Williams's pocket was the mate to an earring belonging to Patterson, which Williams left at the store. (RR5: 124, 127-129, 131-132; SX 25).

Detective Shelton obtained a surveillance video from B&B Pawn Shop which shows Williams pawning some of the jewelry stolen in the robbery, including several rings. (RR5: 124-125, 129-130; SX 23). B&B Pawn Shop also provided a copy of the second pawn ticket. (RR5: 125; SX 21, 22). The pawn tickets reflect that the items were pawned at 5:04 p.m. and 5:11 p.m. on the date of the offense. (RR5: 131).

After Williams's arrest, Detective Shelton conducted a recorded interview with him. (RR5: 101, 133-140; SX 26). Although Williams avoided any outright or direct admission his guilt, his partial admissions in the context of the conversation made it clear that he committed the robberies. He was adamant that he did not use a real gun. (RR5: 135-137, 140, 154). He described it as a "cap gun" or a "pellet gun." (RR5: 135). Williams admitted that he walked to the store; he refused to say whether anyone was waiting for him outside. (RR5: 138).

6

Although Williams argued with the detective, he repeatedly indicated he was willing to show the detective where some of the stolen property was—but only on his terms. (RR5: 138). He told the detective the stolen items were in South Dallas but would not be more specific. (RR5: 138-139). Repeatedly, Williams attempted to negotiate with the detective, asking how cooperating and providing specifics about the robbery would help him. (RR5: 139). He admitted he "made a mistake" and explained that he did it because he had bills to pay. (RR5: 139-140). He also said the altercation with Haley, the man in the store, was not a fight, but a scuffle. (RR5: 154).

Caryol was never asked to view a photo lineup. (RR5: 72). Patterson testified that she would be unable to identify the robber because he was wearing a blue ball cap which was pulled forward on his face. (RR5: 85-87).

The property Williams stole included Harris's wedding ring; Harris's gold, amethyst, and turquoise necklace; Caryol's five rings; and all of the jewelry Patterson was wearing, except one earring, which Williams left behind, and her billfold. (RR5: 41, 62-63, 67-68, 82-84; SX 30). Patterson's billfold contained her checkbook, credit cards, social security card, driver's license, and $80 cash. (RR5: 82). Caryol identified State's Exhibit 17 as a ring that her daughter had given her. (RR5: 69).

7

The defense called one witness in the guilt/innocence phase of trial, Sergeant David Stephens, who administered the photo lineup to Harris. (RR5: 157, 160-161; SX 3). The jury found Williams guilty in both robbery cases. (RR6: 36).

## SUMMARY OF ARGUMENT

### Points of Error One and Two

Defense counsel's own outside-the-record inquiry in closing arguments regarding the whereabouts of a witness who did not testify invited the prosecutor's response that the witness was out of the country. The trial court sustained Williams's objection to the prosecutor's response, and the trial court had already orally instructed the jury in the general charge (immediately prior to closing arguments) to disregard any comments of counsel in arguments which were not supported by the evidence. The trial court's denial of the motion for mistrial was not an abuse of discretion and Williams's request for a specific instruction for the jury to disregard the comment was untimely. Nevertheless, Williams was not harmed because the jury still would have found him guilty of the robberies even if the prosecutor had not made the comment.

### Points of Error Three and Four and State's Cross-Point

Based on the whole record, Williams was not sentenced outside the applicable range of punishment, his sentence is not illegal or void, and there was no error. Moreover, this Court should reform the written judgments to reflect that

Williams pleaded "not true" to the first enhancement paragraphs in both cases and the trial court found those enhancements to be true.

## ARGUMENT

**RESPONSE TO POINTS OF ERROR ONE AND TWO**

**Defense counsel invited the prosecutor's argument at trial; therefore, the trial court's denial of Williams's request for an instruction to disregard the argument and denial of his motion for mistrial were not improper. Alternatively, the trial court did not err by refusing to specifically instruct the jury to disregard the prosecutor's comment because, although the trial court sustained Williams's objection, the request for an instruction was untimely. The trial court had already generally instructed the jury to disregard any arguments not supported by the evidence. Additionally, the trial court did not abuse its discretion by denying Williams's request for a mistrial.**

In his first point of error, Williams alleges that after sustaining his objection to a portion of the prosecutor's closing argument, the trial court erred in denying his request for an instruction to disregard. In his second point of error, Williams alleges the trial court erred when it denied his request for a mistrial based on the same comment. These allegations should fail.

Defense counsel argued as follows during his closing arguments:

One of the final things that I will discuss with you, that has been eating at me this entire case, is something the State completely failed to bring to you. Where's Leon [Haley]? Where's Leon?

Where's the man that apparently allegedly struggled with Mr. Williams, fought him face to face, hand-to-hand combat? If there's anybody that's gonna be able to point somebody out, it's probably the

9

person that was involved in hand-to-hand combat with him. Where's Leon?

(RR6: 24-25). In her rebuttal argument, the prosecutor responded:

> And defense counsel asks where is Mr. Haley? Well, just like the judge told you during voir dire, you can have the worst week ever for jury and not be able to do something.
>
> Well, Mr. Haley is out of the country.

(RR6: 28). Defense counsel objected on the basis that the argument "was not in the evidence." (RR6: 28). The trial court sustained the objection. Defense counsel immediately asked for a mistrial, which the trial court denied. (RR6: 28). The prosecutor then continued her argument as follows:

> We brought you the witnesses that were there, that had the most specific and most detailed pieces of evidence that we could bring you. Just like they have subpoena power, so do we, and we decided that it was efficient to bring you the people who had something stolen that we could prove and the person that was able to identify and recognize this defendant.
>
> And each of them told you there was a cell phone dropped. And because of this cell phone, the detective, Detective Shelton, was able to do his research, contact Fusion, and conduct an investigation that led him to this defendant, and that's where he got the picture.
>
> And it all started with this cell phone that everybody told you was dropped at the scene, and you can see the pictures of that. So Detective Shelton had an independent way of tracking him back to the scene.
>
> Holly Harris was shown a lineup by Sergeant Stephens, who had no idea which suspect it was. The lineup is proper when there's no suggestion, there's no hints, there's no trying to coerce the witness in

10

– into making an identification; and I urge you to watch the video yourself to see exactly what happened.

(RR6: 28-29).

After the denial of Williams's request for a mistrial, the prosecutor completed the remainder of her closing argument, consisting of more than five pages of the record. (RR6: 29-33). The trial court instructed the jury to retire to deliberate. (RR6: 34). Defense counsel then asserted an objection for the record, as follows:

> This is a classic example of bad faith on the part of the prosecution, to deliberately put into evidence before the jury that didn't come from that witness stand, this personal knowledge out of the prosecutor. That element that she used her bad faith on, "Where is Leon" was the key -- one of the major keys to this case. That's error, Judge.

(RR6: 34-35). Counsel reasserted his request for a mistrial, than added, "Or even to the extent of doing an additive unlimited charge to this jury telling them not to consider what the prosecutor's statement was." (RR6: 35). The prosecutor responded:

> Your Honor, our position is that the defense counsel invited the assertation [sic] by stating that this is the fact that's been bothering him the most and wondering where Leon Haley is. Especially when he knows full well, as I disclosed to him before the trial date.
>
> So he invited the application and the curiosity and we're permitted to respond.

(RR6: 35). The trial court denied the requests for a mistrial and an instruction, noting that the State's comment was a result of defense counsel's inquiry, "Where is Leon? Where is Leon?" (RR6: 35).

*Defense Counsel Invited the Prosecutor's Response*

Jury argument by the State is generally considered permissible if it falls within one of the following categories: (1) summation of the evidence adduced at trial; (2) reasonable deductions from that evidence; (3) answer to argument of defense counsel; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The invited argument rule permits prosecutorial argument outside the record in response to defense argument that goes outside the record; however, a prosecutor may not stray beyond the scope of the invitation. *Wilson v. State*, 938 S.W.2d 57, 60-61 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002). The concept of an invited response is not used to excuse improper comments but to determine the effect of the comments on the trial as a whole. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

In this case, the prosecutor's remark was in direct response to defense counsel's repeated question, "Where is Leon?" *See Wilson*, 938 S.W.2d at 60-61; *Davis v. State*, No. 09-01-070-CR, 2001 Tex. App. LEXIS 8075, at *13-14 (Tex. App.—Beaumont Dec. 5, 2001, pet. ref'd) (not designated for publication)

12

(holding defense counsel "opened the door" when he commented on the State's failure to call a witness and described the witness as "the missing link," and prosecutor's explanation that he did not call the witness to testify because he believed the witness would simply take the Fifth Amendment and remain silent was within the scope of proper argument). Here, defense counsel's comments, which invited the State's response, were outside of the record. Counsel not only introduced the inquiry of "Where is Leon [Haley]?" but also suggested that Haley should have been able to identify Williams and Haley's non-appearance implied he might not be able to successfully do so.

*Preservation of Error*

To preserve error regarding improper jury argument, a defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is insufficient to remove the prejudice resulting from the argument. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *see* Tex. R. App. P. 33.1(a). If a trial court sustains an objection to improper jury argument, the defendant must request an instruction to disregard and move for a mistrial to preserve error. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998).

Initially, when the trial court sustained Williams's objection to the prosecutor's argument, defense counsel moved for a mistrial without requesting an

13

instruction for the jury to disregard the comment. (RR6: 28). Because Williams did not request an instruction to disregard at that time, he did not preserve any error, and the trial judge's denial of his first request for a mistrial was not improper. *See* Tex. R. App. P. 33.1.

In addition, defense counsel's later request for an instruction was untimely. After the initial exchange, Williams did not raise the issue again on the record until the prosecutor had completed her argument (RR6: 28-33) ***and*** the trial court had discharged the jury to deliberate (RR6: 34). Williams's counsel then reasserted his objection outside the presence of the jury, alleging bad faith on the part of the prosecutor, and asked for a mistrial or a "charge to the jury telling them not to consider [] the prosecutor's statement []." (RR6: 35). This request for an instruction was untimely due to the delay in asserting it until after the prosecutor had completed her argument; as a result, any error regarding the denial of an instruction to disregard has not been preserved for consideration on appeal.

*Williams was Not Harmed*

Presuming (without admitting) that the trial court was required to sustain Williams's objection and his request for an instruction was timely, the trial court's refusal to grant a mistrial was not improper and did not result in harm. The Court of Criminal Appeals has explained that:

> There are three factors to consider when assessing the impact of the harm arising from jury argument error: (1) the severity of the

14

misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction).

*Berry v. State*, 233 S.W.3d 847, 858-59 (Tex. Crim. App. 2007).

Regarding the first factor, the complained-of response by the prosecutor did not rise to the level of being "severe." The prosecutor's response that Haley was out of the country merely informed the jury that he was not available to be called as a witness to testify by either party. The comment was impromptu, was not a willful or calculated attempt to harm Williams, and was made directly in response to defense counsel's argument. Also, the comment made no reference to whether Haley could identify Williams. Then, after the trial court sustained Williams's objection, the prosecutor explained that the State brought the witnesses with the "most specific and most detailed pieces of evidence," including those "who had something stolen," and "the person that was able to identify and recognize this defendant." (RR6: 28). The prosecutor also pointed out that both parties have subpoena power. (RR6: 28). She next reminded the jury that the cell phone left at the scene led the detective to Williams. Therefore, if the comment that Haley was out of the country was erroneous, this additional argument, which was not outside the record, ameliorated any harm. In fact, the prosecutor's reference to "the person that was able to identify and recognize this defendant" could have been interpreted

15

as a suggestion that Haley would not have been able to identify Williams and, therefore, could have served to support defense counsel's implication that Haley was not present because his testimony would not have been favorable to the State. Accordingly, based on the prosecutor's additional comments, there was no harm, and this factor should not weigh in Williams's favor.

Regarding the second factor, no specific curative instruction was given; however, counsel did not request an immediate curative instruction. Williams's untimely request after the jury retired would have required the trial court to either return the jury to the courtroom for an oral instruction or provide a supplemental written instruction to the charge; the court may have believed that either course of action would have overemphasized the alleged erroneous argument (to which the court had already sustained an objection).

In addition, the trial court's general jury instructions, which the judge read to the jurors prior to closing arguments, already contained an applicable instruction. The charge contained a limiting instruction that statements of counsel made during argument "not supported by the evidence" were to be disregarded, as follows:

> You are instructed that any statements of counsel made during the course of this trial or during argument not supported by the evidence, or statements of law made by counsel not in harmony with the law as stated to you by the Court in these instructions, are to be wholly disregarded.

16

(RR6: 11; CR1: 75; CR2: 77).  Because Williams did not timely request a curative instruction and because the jury had already received a general instruction covering the complained-of issue, this factor should weigh in favor of the State.

Regarding the third factor, the evidence proving Williams's guilt in these robberies was overwhelming, and the certainty of his convictions absent the complained-of argument was clear.  Despite his baseball cap being pulled low, the store manager, Harris, testified she had plenty of opportunity to view his face during the robbery.  Particularly, when Williams retrieved her jewelry from the floor, she saw his face at a distance of only a foot and a half.  Harris identified him later that same day in a double-blind photo lineup procedure which was recorded and played for the jury.  Officers quickly identified Williams as a suspect because he dropped his cell phone during the robbery.  The robbery occurred shortly after noon, and Williams was recorded at shortly after 5:00 p.m. pawning some of the stolen jewelry.  When he was arrested that evening, he had two pawn tickets, a ring identified and owned by a victim, and a single earring identified and owned by another victim in his pockets.  Williams had left the matching earring to the set on the floor in the store.

Furthermore, in a recorded interview with the detective, Williams admitted to numerous facts proving he committed the offense, including being in the store, using a pellet or BB gun, and wrestling with a man in the store.  He attempted to

17

negotiate with the detective about showing him where the remainder of the jewelry was, although ultimately he refused to provide any specific information. A review of the whole record shows the jury would have found Williams guilty of these robberies even if the prosecutor had not made the complained-of closing argument. Accordingly, this factor weighs heavily for the State.

The State asks this Court to conclude although there was no specific curative instruction given after the trial court sustained defense counsel's objection, the factors discussed above and the general instructions provided in the jury charge weigh in the State's favor. Furthermore, the alleged conduct was not severe, and the evidence supporting the conviction was overwhelming. The jury's guilty verdicts would not have changed even if the argument had not been made. Therefore, Williams was not harmed by the alleged error, and the trial court did not abuse its discretion in refusing to grant a mistrial. The State asks this Court to overrule Williams's first and second points of error.

**RESPONSE TO POINTS OF ERROR THREE AND FOUR**

**AND**

**THE STATE'S CROSS-POINT TO REFORM THE JUDGMENTS TO REFLECT WILLIAMS'S PLEAS OF "NOT TRUE" AND THE TRIAL COURT'S FINDINGS OF "TRUE" ON THE FIRST ENHANCEMENT PARAGRAPHS**

> **Based on the whole record, Williams was not sentenced outside the applicable range of punishment, his sentence is not illegal or void, and there was no error. Moreover, this Court should reform the written judgments to reflect that Williams pleaded "not true" to the first enhancement paragraphs in both cases and the trial court found those enhancements to be true.**

In his third and fourth points of error, Williams contends that the trial court's oral pronouncements of the sentences conflict with the written judgments in the two cases because the judgments reflect findings of true on the second enhancement paragraphs and the court did not orally pronounce its findings. He further contends that without oral pronouncements on the enhancement paragraphs, his sentences of 50 years' incarceration in both cases are outside the applicable punishment range and are void. These contentions should fail.

*Introduction and Applicable Law*

Generally, complaints about a trial court's failure to make oral findings on enhancement paragraphs must be raised at trial to be preserved for appeal. *See* Tex. R. App. P. 33.1(a); *Garner v. State*, 858 S.W.2d 656, 659 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding Garner failed to preserve his complaint that the

19

trial court erred by not making an oral finding regarding his enhancement paragraph after he failed to object at trial). However, when a sentence is void, a defendant may complain about it at any time. *See Ex parte Rich*, 194 S.W.3d 508, 511 (Tex. Crim. App. 2006); *see also Ex parte Pena*, 71 S.W.3d 336 n.2 (Tex. Crim. App. 2002) ("A 'void' or 'illegal' sentence is one that is not authorized by law."). "A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) (en banc); *Mapes v. State*, 187 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

A trial court is not required to read the enhancement paragraph or the findings to a defendant when the trial court alone assesses the defendant's punishment. *See Reed v. State*, 500 S.W.2d 497, 499 (Tex. Crim. App. 1973); *Seeker v. State*, 186 S.W.3d 36, 39 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Additionally, an appellate court may modify an incorrect judgment when it is necessary to accurately reflect the outcome of the trial court proceedings and the necessary information is available to do so. *See Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529-30 (Tex. App.—Dallas 1991, pet. ref'd).

Williams waived a jury in the punishment phase of trial, and the trial court alone assessed punishment. Because the trial court had no duty to make oral

20

findings of true or not true on the enhancement paragraphs, the findings of true on the second enhancement paragraphs in the written judgments are not inconsistent with the trial court's oral silence concerning the findings. *See Seeker*, 186 S.W.3d at 39. Furthermore, the judgments should be reformed consistent with the whole record to reflect the trial court's findings of true on the first enhancement paragraphs.

*Background and Facts*

Williams's indictment for robbery in cause number F13-56255-J alleged two enhancement paragraphs for prior convictions of (a) aggravated robbery in cause number F86-92950 on June 5, 1987, and (b) possession of a controlled substance in cause number F82-86239 on June 17, 1982. (CR1: 10). Williams's indictment for robbery in cause number F13-71062-J alleged two enhancement paragraphs for prior convictions of (a) robbery in cause number F86-92951 on June 5, 1987, and (b) possession of a controlled substance in cause number F82-86239 on June 17, 1982. (CR2: 9).

On March 11, 2014, about two weeks prior to trial, the trial court admonished Williams that the offense of robbery is "normally a second-degree felony" and the "range of punishment is normally two to 20 years in the penitentiary and a fine of up to $20,000." (RR2: 4, 5-6). The trial court then explained the enhanced punishment range, continuing: "It's my understanding that

21

the State of Texas has indicted you, however, with two paragraphs, saying that you've previously been convicted of a felony. If that is, in fact, true then the range of punishment becomes 25 to 99 years or life and a fine up to $10,000." (RR2: 4-5). Williams confirmed that he understood the enhanced punishment range. (RR2: 5). The record reflects that the State's only plea bargain offer to Williams had been 40 years' incarceration. (RR2: 6-7). Williams stated that his attorney had advised him of the possibility of a life sentence. (RR2: 9). Additionally, in admonishing Williams regarding full cooperation with his counsel, the trial court commented that Williams was "facing the possibility of spending the rest of [his] life in the penitentiary." (RR2: 10-11). The trial court referenced Williams being charged with "two habitual offenses, where the State has offered you 40 years." (RR2: 11). The discussion continued with the following exchange:

> THE COURT: You know, it looks like at least one of these cases that they're saying is a prior was an aggravated robbery. I don't know whether that's true or not. But if you've previously been convicted of an aggravated robbery and now you're charged with two new robberies, what do you think is gonna happen if the jury finds you guilty?

> THE DEFENDANT: Yes, ma'am.

> THE COURT: Okay? So let's be realistic. How old are you?

> THE DEFENDANT: 55.

> THE COURT: Okay. All right. So you understand that any sentence -- and 25 is the minimum. If you're convicted on either

22

one of these cases, 25 is the minimum. You understand, as well as I understand, that a 25-year sentence is a life sentence for you.

THE DEFENDANT: Yes, ma'am.

(RR2: 11-12). After the prosecutor mentioned stacking any new sentences on the sentence for which Williams was on parole, the judge again referenced the enhanced punishment range Williams was facing of 25 years to life in prison. (RR2: 13).

Prior to the commencement of trial, the State filed a motion to strike the second enhancement paragraphs alleging the prior conviction for possession of a controlled substance along with a notice of its intent to substitute Williams's February 25, 1985 conviction for burglary of a building in cause number F84-7884. (CR1: 83, 88; CR2: 89-90). The parties and the court discussed the State's request; Williams opposed the amendments. (RR3: 13-15). The discussion included a reference to the minimum sentence of 25 years' incarceration based on the two enhancement paragraphs.

After a jury determined guilt in these cases, the trial court held a hearing and assessed punishment. At the beginning of the punishment hearing, Williams was arraigned and pleaded not true to the two enhancement paragraphs in each case. (RR6: 38-40). Deputy Margaret Brown Lewis, an employee of the Dallas County Sheriff's Department Identification Section, testified for the State that Williams is

23

the person whose criminal convictions are reflected in State's Exhibits 32 through 33, which show convictions for the following nine offenses on June 5, 1987: robbery (habitual) in cause numbers F86-92918, F86-92951, and F86-92958; aggravated robbery (habitual) in cause numbers F86-92917, F86-92950, F86-93047, F86-93060, and F86-93048; and theft of property of a value of $750 or more but less than $20,000 (habitual) in cause number F86-92699. (RR6: 43-50; SX 31-33). The records proved that in cause numbers F86-92699, F86-92950\ (alleged as the first enhancement paragraph in one of the instant cases), and F86-92951 (alleged as a first enhancement paragraph in the other instant case), Williams had pleaded true to two enhancement paragraphs, including one for burglary of a building in cause number F84-7884 (February 29, 1985), which is the second enhancement paragraph alleged in the instant cases. (RR6: 53-54; SX 38-40). The trial court also admitted the judgment reflecting Williams's conviction for burglary of a building in cause number F84-7884 (the second enhancement paragraphs alleged in the instant cases), for which Williams was sentenced to three years' incarceration in the Texas Department of Corrections. (RR6: 58; SX 35). Records reflected Williams's additional convictions for burglary of a vehicle in cause number F87-87264 on August 25, 1978 (RR6: 58-59; SX 34) and robbery in cause number F03-58892 on November 2, 2004 (SX 33).

24

Williams testified in his own behalf during the punishment phase. He told the judge he first went to the penitentiary when he was 17 years old and had spent a total of 28 years in prison. (RR6: 65). Williams also indicated he had pleaded guilty in every prior criminal case. (RR6: 67). On cross-examination, the State reviewed Williams's extensive criminal history, periods of incarceration, and periods of parole, which Williams confirmed. (RR6: 69-77). During argument, the State asked the trial court to sentence Williams to at least 35 years confinement, which was the length of his most recent sentence. (RR6: 82).

At the conclusion of the punishment evidence, the trial court assessed Williams's punishment at 50 years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice in each case. (RR6: 83). During sentencing, the court did not announce oral findings on the enhancement paragraphs.

The trial court's March 26, 2014 docket sheet entries in each case include the following:

> Defendant [abbreviated] arraigned on enhancement paragraphs; pled NOT TRUE to both paragraphs; State called Deputy Brown-Lewis; State rests. Defense calls Michael Williams. Court finds both paragraphs true. Defendant [abbreviated] sentenced to 50 yrs [sic] imprisonment TDCJID with NO FINE; credited with back time. Cases are to run concurrent.

(CR1: 9; CR2: 8).

25

Regarding the first enhancement paragraphs, the written judgments reflect "N/A" regarding Williams's plea and the trial court's findings. (CR1: 80, CR2: 81). The judgments reflect a plea of "not true" and a finding of "true" on the second enhancement paragraphs. (CR1: 80, CR2: 81).

*Williams has Waived his Complaints*

To preserve a complaint for appellate review, the complaining party must make a timely request, objection, or motion to the trial court. The record demonstrates that, prior to his trial and his punishment hearing, Williams was aware he was subject to enhanced punishment due to the two enhancement paragraphs. Knowing that his punishment was subject to findings regarding the enhancement paragraphs, any complaint he had at sentencing about the trial court's failure to announce its findings on those paragraphs should have been raised when the trial court was in the position to institute a remedy and pronounce its findings. Fairness requires him to have raised the complaint when it was possible for the court to easily and judiciously correct any error. This Court should not allow Williams to fail to timely raise his issue and yet later complain that he was sentenced outside the proper punishment range. Because he did not complain about the trial court's oral silence on the enhancement paragraphs in its pronouncement of the sentence, Williams has failed to preserve his issues for appeal. *See* Tex. R. App. P. 33.1(a); *Garner*, 858 S.W.2d at 659.

26

*Application, Analysis, and the State's Request to Reform the Judgments*

Williams was convicted of two second-degree felony robberies. *See* Tex. Penal Code Ann. § 29.02(a)(2), (b) (West 2011) (defining robbery and indicating that robbery under section 29.02 is a felony of the second degree). The State further alleged two enhancement paragraphs identifying two prior felony convictions, enhancing the punishment range to 25 to 99 years or life. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2014) (providing a punishment range of incarceration for 25 to 99 years or life for most felonies, including second degree felonies, if it is shown the defendant has previously been finally convicted of two felony offenses). On appeal, Williams contends that because the trial court did not pronounce its findings regarding the enhancement paragraphs, he should have been punished in the range of a second-degree felony, which is two to 20 years' imprisonment. (Williams's Br. at 18, 20-21). *See* Tex. Penal Code Ann. § 12.33(a) (West 2011). He argues his 50-year sentence is therefore outside the punishment range and is void, and as a result he seeks a new punishment hearing. (Williams's Br. at 22).

Williams's contentions that the findings of "true" in the judgments for the second enhancement paragraphs conflict with the trial court's silence in its oral pronouncement of the sentence fail because a trial court who alone assesses punishment is not required to orally announce the findings. *See Seeker*, 186

27

S.W.3d at 39 (holding that the finding of true in the written judgment was not inconsistent with the trial court's oral silence regarding a particular paragraph because the trial court had no duty to make an oral finding of true or not true on the enhancement paragraph). Additionally, if a judgment can be reformed, it is not void, and the State here asks this Court to reform the judgments to reflect Williams's pleas of "not true" and the trial court's findings of "true" on the first enhancement paragraphs in both cases. Alternatively, the State asks this Court to abate these appeals to allow the trial court to correct the judgments.

Although the judgments reflect that the first enhancement paragraphs were "not applicable," these entries are without a doubt contrary to the record. The indictments in both cases reflect two enhancement paragraphs, the trial court fully admonished Williams regarding both enhancements in each case, Williams entered pleas to the first enhancement paragraphs, and the State offered and the trial court admitted judgments reflecting convictions for the cases alleged in the first enhancement paragraphs.

Particularly, the record reflects that the trial court admonished Williams at a pre-trial hearing approximately two weeks prior to trial on the enhanced punishment ranges, based on the two enhancement paragraphs in each indictment. (RR2: 4-5). In addition to the formal admonishments regarding the enhanced punishment range, the trial court took an active role in discussing Williams's need

28

to cooperate fully with his attorney in preparing for trial. In support, the court repeatedly referenced the enhanced punishment range, referring to the minimum punishment of 25 years' incarceration, the maximum punishment of life in prison, and the fact that Williams was charged as a habitual offender. (RR2: 9-13). This portion of the record demonstrates that all parties involved in this case were cognizant of the applicable, enhanced punishment range. Additionally, the record reflects that the State's only plea bargain offer to Williams had been a sentence of 40 years' incarceration, well above the maximum penalty of 20 years on an un-enhanced robbery. (RR2: 6-7, 11). The record of the trial court's formal admonishments regarding the applicable enhanced punishment ranges along with further mention of the enhanced punishment, including the minimum and maximum sentence of incarceration, distinguishes this case from other cases in which the record reflects no discussions of the existence of the enhancements.

On the day of the trial setting but before jury selection began, the trial court again reminded Williams that he was subject to two enhancement paragraphs and a punishment range of 25 to 99 years' incarceration or a life sentence. (RR3: 5-6). Additionally, the State moved to amend the indictments by striking the second paragraphs alleging a prior conviction for possession of a controlled substance in cause number F82-86239 and substituting paragraphs alleging a conviction for burglary of a building in cause number F84-7884. (RR3: 13-14). Defense counsel

29

pointed out during his objection to the State's proposal that Williams was subject to a minimum sentence of 25 years' incarceration. (RR3: 15). The trial court granted the State's request. (RR3: 15).

At trial, the State's evidence and Williams's own testimony proved the existence of a plethora of prior felony convictions, including those alleged in the enhancement paragraphs. (RR6: 42-61, 65, 67, 69-77; SX 32-40). The records further reflected Williams had previously pleaded true when the burglary of a building case (in the substituted second enhancement paragraphs) was alleged as an enhancement in prior convictions.

In short, although the record does not reflect the oral pronouncements of the trial court's findings, the court admonished Williams multiple times regarding the enhancements and the enhanced range of punishment for the offenses. Further, the evidence, including certified records and William's own testimony, proved he was previously convicted of the alleged enhancements, the written judgments reflect findings of true on the second enhancement paragraphs, and the trial court's docket sheets reflect the court's intent regarding findings of true on both paragraphs.

In his brief, Williams relies on this Court's unpublished opinion in *Johnson v. State*, Nos. 05-10-00465/00608-CR, 2011 Tex. App. LEXIS 6208, at *12-18 (Tex. App.—Dallas Aug. 10, 2011, no pet.) (memo op., not designated for publication), which in turn relied on *Turk v. State*, 867 S.W.2d 883, 887-88 (Tex.

App.—Houston [1st Dist.] 1993, pet. ref'd) (declining to reform the judgment where Turk entered a plea of not true to one enhancement paragraph and a plea of true to a second enhancement paragraph, no fact finding was made on the enhancement paragraphs, yet the written judgment stated each was found true). (Williams's Br. at 20-21). *Johnson* is distinguishable, however, because the trial court here explained the consequences of Williams's punishment being enhanced by two prior convictions. In *Johnson*, there was no record of the trial court discussing enhancements with the defendant. *Johnson*, 2011 Tex. App. LEXIS 6208, at \*17. *Turk* is also distinguishable because there the trial court did not receive ***any*** evidence proving the enhancement, where the record lacked any proof due to the fingerprint witness not being available to testify initially and the case was continued before another judge. *Turk*, 867 S.W.2d at 887.

For all of these reasons and based on the whole record, the judgments properly recite findings of "true" to the second enhancement paragraphs, and this Court should reform the judgments to reflect pleas of "not true" and findings of "true" on the first enhancement paragraphs. Based on this record, the Court has the "necessary data and information" to reform the judgments, and the State asks it to do so. *See Asberry*, 813 S.W.2d at 529. The State asks this Court to overrule Williams's third and fourth points of error.

31

## PRAYER

The State prays that this Honorable Court will reform the judgments to reflect Williams's pleas of "not true" and the trial court's findings of "true" on the first enhancement paragraphs, and affirm the judgments, as amended.

Respectfully submitted,

/s/ Shelly O'Brien Yeatts
Shelly O'Brien Yeatts
Assistant District Attorney
State Bar No. 24033487
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399
(214) 653-3625
(214) 653-3643 *fax*
syeatts@dallascounty.org

Susan Hawk
Criminal District Attorney
Dallas County, Texas

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2015 a true copy of the foregoing brief was served on Julie Woods, Assistant Public Defender, 133 North Riverfront Blvd., LB-2, Dallas, Texas 75207-4399, by utilizing the service function in the Texas efile system and by hand delivery.

/s/ Shelly O'Brien Yeatts
Shelly O'Brien Yeatts

## CERTIFICATE OF COMPLIANCE

I hereby certify that there are 7,016 words in this document, excluding the caption, table of contents, index of authorities, statement of the case, signature, proof of service, and certificate of compliance. This number does not exceed the maximum number of words allowed. *See* Tex. R. App. Proc. 9.4(i)(2)(B) (allowing 15,000 words in response briefs).

/s/ Shelly O'Brien Yeatts
Shelly O'Brien Yeatts
